In the Matter of the Judicial Settlement of the Account of ROBERT WILLETS et al., as Trustees, etc.

The will of W. after providing for twelve annuities and directing his executors to set apart and invest a sum sufficient to produce said annuities, directed that the fund and the unappropriated income thereof should, on the decease of the annuitants as they respectively die, be divided among his grandchildren ' who shall be living at the time of the death of the respective annuitants" *per capita* and not *per stirpes*. The residuary estate was given to the executors in trust to be sold and the net proceeds to be divided into as many shares as the testator had grandchildren, each share to be invested and the income thereof to be applied to the use of a grandchild during life, the remainder to his or her lawful heirs; if either died leaving no issue the share of the one so dying to be paid over to the survivors. By a codicil the testator revoked "all the provisions and bequests" in favor of A., one of the grandchildren and her issue, contained "in the residuary clause" of the will. *Held*, that the revocation had reference only to the final residuary clause and did not affect the bequest to A. of a share of the residue of the annuity fund.

The executors, after settlement in 1884 of their accounts as such, as trustees, set apart twelve different trusts, one under the annuity clause, four under the residuary clause, *i. e.*, one for each grandchild excepting A., and the other seven under other trust provisions in the will. In 1885 the trustees filed twelve petitions and obtained twelve citations for the settlement of their accounts as trustees. Certain contestants claimed that but one proceeding should have been instituted. The surrogate refused to compel a consolidation of the accounts. *Held*, no error; that it was proper for the trustees to constitute the several trusts and keep the accounts as to each separate.

Upon settlement of the accounts of the executors, the decree directed that they should pay to themselves as trustees the several trust funds. *Held*, that under the will the duties of the executors, as such, were to be first discharged, and then they were to assume the duties of trustees, and their function as executors having been terminated by the decree, they were entitled thereafter to commissions as trustees.

The surrogate allowed the trustees on settlement of their accounts as such one-half commissions for receiving the trust funds from themselves as executors. *Held*, no error.

The decree of the surrogate on settlement of the executors' accounts fixed the sum to be set aside for the annuity fund. *Held*, that said decree not having been appealed from, it could not be reviewed or reversed on appeal from the decree settling the trustees' accounts.

The trustees were six in number. They were allowed three full commissions upon $13,287.69, income of the annuity fund received by them, under the provisions of the Code of Civil Procedure (§§ 2736, 2811) providing that where the personal estate of a decedent amounts to $100,000 over all his debts, each executor, administrator or testamentary trustee, where there are not over three, shall receive full commissions; where there are more than three, three full commissions " shall be apportioned among them." The personal estate of the decedent was more than $100,000 and the principal of the annuity fund was $400,000. *Held*, that the allowance was error; that when trustees account in reference to income, which they are required annually to pay over, whatever may be the amount of the estate or of the principal producing the income, said provisions of the Code do not apply unless the income exceeds $100,000, and that the trustees were entitled to but one commission.

(Argued December 21, 1888; decided January 22, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made October 12, 1886, which affirmed a decree of the surrogate of the county of New York upon settlement of the accounts of respondents as trustees under the will of Samuel Willets, deceased.

Sometime before February 28, 1883, Samuel Willets, of the city of New York, died leaving a last will and testament, with two codicils thereto, which, on that day, were admitted to probate by the surrogate of the city of New York. The testator by his will devised and disposed of property amounting to about $2,500,000. He created various trusts, besides those hereafter mentioned, and provided for annuities to thirteen different persons, one of whom died in his lifetime, and he directed that his executors should " set apart and invest a fund sufficient to produce the above annuities, or a sufficient amount of stocks to be held for that purpose, or a part of each, which fund, and the unappropriated income thereof, is on the decease of the annuitants, as they respectively die, to be divided among my grandchildren who shall be living at the time of the death of the respective annuitants, *per capita* and not *per stirpes*, only retaining an amount sufficient to produce the required amount for the remaining annuitants."

The residuary estate was disposed of as follows:

"I do give, devise and bequeath all the rest, residue and remainder of my estate, real and personal, wheresoever and whatsoever, and such as I may die seized and possessed of, unto my executors hereinafter named, the survivors and survivor of them, in trust for the following purposes: And I do order and direct my said executors, the survivors and survivor of them, or such of them as shall act, to sell, dispose of and convert into cash, the said residue of my said estate, and to execute and deliver to the purchasers of such real estate, good and sufficient deeds of conveyance therefor in fee simple; such sales of real estate to be made at public auction or private sale, and at such times and on such terms as they shall deem best, and I hereby give them full power and authority to make such sales and conveyances as aforesaid; and I order and direct that the net proceeds thereof shall be divided by my executors into as many shares as there shall be of my grandchildren. And I direct that my executors do invest and keep at interest on bond and mortgage upon real estate, or in stocks of a permanent and productive nature, all of said shares and apply the interest, income and dividends of one of said shares, as the same shall be received, to the use of Caroline W. Frame, one of my said grandchildren, during her natural life, and from and after her death, that they pay over the principal and accumulations, if any, to her lawful heirs."

There was a similar provision as to each of his four other grandchildren, one of whom was Amelia W. Leavitt. It was further provided that, "in case it shall happen that either of my said grandchildren shall leave no issue as aforesaid, him or her surviving, then the share of the one so dying shall be paid over to the survivors. And in case of the death of either of said grandchildren, and he or she shall have left grandchildren, children of any deceased child who shall have died leaving issue, such issue shall take by representation the share of the parent."

The second codicil to his will contained the following provision: "In consequence of having made large and sufficient

provisions, bequests and devises to my granddaughter, Amelia W. Leavitt, and her issue in the other portions of my said will, I hereby annul and revoke all of the provisions and bequests in favor of and given to her and her issue in the residuary clause thereof, and I hereby will and direct that my executors divide the residuary fund therein provided for, into as many shares as there shall be of my grandchildren, exclusive of the said Amelia W. Leavitt, and pay over the income of said shares, and dispose of the principal thereof, respectively, to my said several grandchildren and their issue, as is therein provided, exclusive of the said Amelia W. Leavitt and her issue." He appointed seven persons to be executors of his will, six of whom qualified and have acted as such.

Some time prior to the 29th day of April, 1885, the executors instituted proceedings before the surrogate, for the settlement of their accounts as such, and those proceedings resulted in a decree of the surrogate, made and entered on that day, by which he settled the accounts of the executors, and adjudged the disposition to be made of the funds and property in their hands. Among other things, he ordered, adjudged and decreed, " that the said executors, out of the said balance of principal, pay to themselves as trustees, the sum of four hundred thousand dollars as a fund sufficient to produce the several annuities provided for in said will (with the exception of the annuity to Joseph Hicks, who, having died prior to the death of the testator, said annuity never took effect, but lapsed), and that out of said balance of income they pay to themselves as such trustees, the interest on said sum of $400,000, from February 28, 1885 (the date up to which said annuities have been paid), to said April 29, 1885, at the rate of five per cent per annum, amounting to the sum of three thousand three hundred and eighty-eight and 89-100 dollars, making in all of principal and interest to be so paid over, the sum of four hundred and three thousand three hundred and eighty-eight and 89-100 dollars, to be held and applied by them under the provisions

of said will relating to said fund." And that they pay to themselves, as trustees, the residuary estate to be divided and held by them in the manner provided in the will. Thereafter, the executors, acting as trustees, received the funds directed to be paid to and held by them as trustees under the will, and they set up twelve different trusts. There was one trust, called the annuity trust, consisting of the $400,000 above mentioned, and the residuary estate was divided into four trusts, to wit: One for Caroline W. Frame, one for Edward Willets, one for Frederick Willets and one for Walter R. Willets. The seven other trusts were under other trust provisions in the will. In December, 1885, the trustees filed twelve petitions, and obtained twelve citations for the judicial settlement of their accounts as trustees. Upon such petitions, citations were issued, and served upon the proper parties, and a final decree was made by the surrogate, from which decree Caroline W. Frame, Edward Willets, Frederick Willets and Walter R. Willets appealed.

*Joseph H. Choate* for appellants. The propriety of preventing a multiplicity of suits is a distinct ground of equitable jurisdiction over a cause, a ground of itself reasonable and sufficient to justify courts of equity in taking cognizance of causes and granting relief, when but for that they would have no jurisdiction. (Story's Eq. Jur. §§ 64 k, 66, 457, 854.) The principles of law and equity that multiplicity of proceedings and multiplication of costs and expenses should be avoided, should have been applied here by the surrogate by the consolidation of the accounts and entry of but one decree on the consolidated account. (98 N. Y. 536.) Sections 2736 and 2811 of the Code regulating the compensation of executors and testamentary trustees, do not admit of the construction claimed here by the trustees, nor do the cases in this court on the commissions of trustees. (*Hurlburt* v. *Durant*, 88 N. Y. 122, 127.) When by the terms or true construction of the will the two functions with corresponding duties co-exist, double commissions cannot properly be allowed. (*Johnson* v.

*Lawrence*, 95 N. Y. 160; *Laytin* v. *Davidson*, Id. 263; 98 id. 528.) The commissions allowed the executors, by the decree of April 29, 1885, on the *corpus* of the estate, were all that they are entitled to under the will on the capital up to the time of this accounting, and no further commission on capital should have been allowed. ( *Waters* v. *Faber*, 2 Dem. 290; *Andrews* v. *Goodrich*, 3 id. 245; *Rowland* v. *Morgan*, Id. 289.) The surrogate erroneously allowed half commissions for receiving the capital of the estate. (*In re Allen*, 29 Hun, 7, 9; *In re Baker*, 35 id. 272.)

*Wilson M. Powell* for respondents. The trustees are entitled to full commissions on the income of each trust, and to one-half commissions on the *corpus* or principal of each trust for receiving it. (*Drake* v. *Price*, 5 N. Y. 430; *Weeks* v. *Cornwall*, 39 Hun, 643.) The commissions should be calculated and charged at the rate, in each trust, of five per cent on the first $1,000 of income, and two and one-half per cent on the next $9,000, etc., for each year's income, when made up and ascertained, and paid over, or ready to be paid over, and in each case where the *corpus* of the trust fund exceeds $100,000, three commissions are charged, and these are neither " excessive nor improper." (Code, §§ 2736, 2811; *Waters* v. *Faber*, 2 Dem. 290; *In re Mason*, 98 N. Y. 527, 535; *In re Roosevelt*, 5 Redf. 601; *Hurlburt* v. *Durant*, 88 N. Y. 122; *Laytin* v *Davidson*, 95 id. 263; *In re Goodrich*, 36 Hun, 299; *In re Meserole*, Id. 298; *Clute* v. *Gould*, 28 id. 348, 350.) The trustees are entitled to commisions for receiving the *corpus* or principal of the fund, although the assets still remain in their hands. (*In re Roosevelt*, 5 Redf. 601; *In re Morgan*, 1 How. [N. S.] 182–184; *S. C.*, 15 Abb. N. C. 198; *Rowland* v. *Morgan*, 2 Dem. 289.) Under this will the executors as to this trust fund are " testamentary trustees " and entitled to commissions both as executors and as such trustees. (Code, § 2514; *Holden* v. *N. Y. & E. Bk.*, 72 N. Y. 298; *Hurlburt* v. *Durant*, 88 id. 126; *Hall* v. *Hall*, 78 id. 539; *Laytin* v. *Davidson*, 95 id. 266; *Johnson* v. *Lawrence*, Id. 162; *In re Mason*, 98 id. 527.)

EARL, J.   The questions involved in this appeal were so thoroughly examined in the opinions pronounced by the surrogate and at the General Term that a lengthy statement of our views is not needful, and we will content ourselves with a brief consideration of the objections now made to the rulings and decree of the surrogate.

(1.) It is claimed on the part of the appellants that by the second codicil the bequest of the residue of the annuity fund to Mrs. Leavitt was revoked.   The respondents claim that the revocation had reference to the provision made for her in the final residuary clause, and we think they are right.   The language of the codicil is: "I hereby annul and revoke all of the provisions and bequests in favor of and given to her *and her issue* in the residuary clause thereof."   This language cannot with propriety be applied to the clause in the will setting apart the annuity fund, because that is not described as a residuary clause, and it is in no sense a residuary disposition of property.   In that clause the annuity fund remaining after the annuities have been provided for is not directed to be divided among the grandchildren and *their issue*, but simply among the grandchildren who shall be living at the time of the death of the respective annuitants.   But the final residuary clause provides for the payment of the income to the grandchildren during life, and after death to their *lawful issue*. And the codicil also speaks of the residuary fund provided for in the will.   No other residuary fund is expressly provided for in the will, except by the final residuary clause, and the language used in the codicil is not appropriate to any other clause in the will.   Hence we think the surrogate was right in confining the effect of the revocation by the codicil to the final residuary clause, leaving all the other provisions of the will for Mrs. Levitt untouched and in full force.

(2.) The appellants claim that the executors instead of instituting twelve different accountings for each fund should have instituted but one proceeding for an accounting as to all the funds, and should have rendered but a single account; and that the surrogate erred in not compelling them to con-

solidate all the accounts. We are of opinion that this claim is not well founded. It was quite appropriate that the trustees should constitute · the several trusts and keep the accounts as to each trust separate, and so they were in fact ordered to do by the decree upon their accounting as executors. We certainly can perceive no legal error on the part of the surrogate in entertaining a proceeding for a separate accounting as to each trust. Even if the trustees were not obliged in the discharge of their duties to set up the different trusts, it is certainly the most convenient and orderly way to manage the trust estates to keep them separate and deal with them as separate trusts.

(3.) It is objected that the respondents were not entitled to commissions first as executors and afterwards as trustees upon the capital of the trust funds. We do not think that this is a case where the two functions of executors and trustees co-exist and run from the death of the testator to a final discharge, inseparably blended together. But from the language of the will we think the duties of the respondents, as executors, were to be first discharged, and that then they were to assume the duties of trustees, and as such manage the trust funds, to the final termination of the trusts. And so it was treated by the surrogate upon the accounting of the respondents as executors. He settled their accounts as executors and ordered them to pay to themselves as trustees the several trust funds to be held and managed by them as trustees. In such a case under the authorities of this court the respondents, their functions as executors having terminated, are entitled to further commissions as trustees. (*Hurlburt* v. *Durant*, 88 N. Y. 122; *Johnson* v. *Lawrence*, 95 id. 154; *Laytin* v. *Davidson*, Id. 263; *Matter of Accounting of Mason*, 98 id. 527.)

(4.) The surrogate allowed to the respondents one-half commissions for receiving the trust funds from themselves as executors, and this is complained of. Being entitled to full commissions upon the trust funds, were they entitled to one-half of the commissions for receiving the same? The statute pro-

vides the following commissions: " For receiving and paying out all sums of money not exceeding one thousand dollars, at the rate of five dollars per cent. For receiving and paying out any sums exceeding one thousand dollars, and not amounting to ten thousand dollars, at the rate of two dollars and fifty cents per cent. For all sums above ten thousand dollars, at the rate of one dollar per cent." This language received at a very early date construction in the courts, and it was held that executors, administrators and trustees were entitled to one-half of their commissions for the receipt of the funds and the other half for paying out the same. (*Morgan's Estate*, 15 Abb. N. C. 198; *Matter of Roosevelt*, 5 Redf. 601.) While the commissions are allowed for all the services of the trustee, yet in the administration of the statute they have usually been divided, upon the settlement of their accounts, as above indicated ; and we think the surrogate was justified in following the general usage as approved by the courts in such cases.

(5.) It is further claimed that the $400,000 set apart to raise the annuities is too large a sum, and that a portion of it should be restored to the residuary fund. It was the duty of the trustees to set apart a sufficient sum to produce the annuities, and the fund should be so large as to provide against all reasonable contingencies and to make sure that it would produce a sufficient sum to pay the annuities. The surrogate, on the accounting of the executors, determined that the $400,000 should be set aside for that purpose. That determination has never been appealed from and cannot now be reviewed or reversed upon this appeal. But even if it could be we would feel indisposed to interfere with it. If experience shall in the future demonstrate that the fund is more than sufficient to produce the annuities, the trustees are still under the con trol of the courts, and may by proper action of the surrogate or of some other court be compelled to reduce the amount and restore a portion thereof to the residuary fund.

(6.) Upon the settlement of the account it appeared that the trustees had received $13,287.69 income of the annuity

fund, and upon that they were allowed three full commissions under section 2736 of the Code, which provides as follows: "Where the value of the personal estate of the decedent amounts to $100,000, or more, over all his debts, each executor or administrator is entitled to the full compensation allowed by law to a sole executor or administrator, unless there are more than three, in which case the compensation to which three would be entitled shall be apportioned among them according to the services rendered by them respectively; and a like apportionment shall be made in all cases where there shall be more than one executor or administrator." And by section 2811 that section is made applicable to testamentary trustees. It is true that, in this case, the personal estate of the decedent amounted to more than $100,000, and hence, if this accounting had involved the whole of that estate, the trustees would have been entitled to three full commissions thereon to be apportioned among them. It is also true that the principal of the trust fund is nearly $400,000, and, so far as that is concerned, the commissions thereon are to be regulated by section 2736; but when trustees account in reference to incomes which they are required annually to pay over and account for, no matter how much the principal may be, or how much the estate of the decedent may have been, section 2736 does not apply, unless the income exceeds $100,000; and more than one commission can be allowed only in case the sum upon which commissions are computed amounts to at least $100,000.

Having thus noticed all the material objections argued, we are of the opinion that the decree should be modified by allowing but one commission upon the income, and, as thus modified, it should be affirmed, without costs to either party.

All concur.

Judgment accordingly.