HARDIN, P. J., and MERWIN, J., concurred.

---

IN THE MATTER OF THE ACCOUNTING OF FREDERICK EMERSON, AS EXECUTOR, ETC., APPELLANT.

*Executor and trustee — when the two functions are severed — accounting by the executor.*

A testator, by his will, provided as follows: " I give, bequeath and devise all the rest, residue and remainder of my real and personal estate to my friend, Frederick Emerson, the executor of this my last will and testament, hereinafter nominated, in trust for the payment of my just debts and funeral expenses, and then to pay the income from the said estate to Mary A. Webster during her natural life, to be used by her for her own support, and the care, support and education of Mary R. Webster," etc.

He then nominated and appointed Frederick Emerson as sole executor of his will; and further provided, that if Frederick Emerson should die before Mary R. Webster the surrogate should appoint some proper person to take his place.

*Held*, that the will showed that the testator contemplated a severance of the functions and duties of the executor from those of the trustee. (MERWIN, J., dissenting.)

That, upon an application for the final accounting by the executor, his accounts should be examined and passed by the Surrogate's Court, which should make a decree discharging him as executor, and directing a transfer of the estate in his hands as executor into his hands as trustee, and award him such commissions as he was entitled to upon such an accounting and decree.

APPEAL by Frederick Emerson from a decree, entered in the office of the clerk of the county of Jefferson on the 22d day of April, 1890, in proceedings instituted by the said Frederick Emerson, as executor, for his final accounting as such.

On the 11th day of June, 1881, Asahel Read made and executed his last will and testament, whereby, after bequeathing to Asahel Read, son of Hiram C. Read, a certain legacy therein mentioned, he provided as follows : " I give, bequeath and devise all the rest, residue and remainder of my real and personal estate to my friend Frederick Emerson, the executor of this my last will and testament, hereinafter nominated, in trust for the payment of my just debts and funeral expenses, and then to pay the income from the said estate to Mary A. Webster during her natural life, to be used by her for her own support and the care, support and education of Mary R. Webster, and from and immediately after the decease of the said Mary A. Webster I give and devise all my said estate to Mary R. Webster, if she shall, at the time, be of the age of twenty-one years, if not, when she shall be twenty-one years of age, and the said income to be used for her benefit until that time." He then nominated and appointed Frederick Emerson as sole executor of his will, with full power, if he should deem it necessary, to sell and convey any or all of his real estate upon such terms and at such times as he should think best. The will also provided that if the appellant should die before Mary R. Webster became twenty-one years of age the surrogate should appoint some proper person to take his place. This will was duly admitted to probate by the surrogate of Jefferson county June 7, 1887. The appellant duly qualified as such executor and has since acted as such. He made and filed an inventory as required by law, published the regular notice to creditors, collected the debts due the estate and paid the funeral expenses, debts and legacies. On the 20th day of January, 1890, the executor voluntarily filed his petition for a final accounting as such. This proceeding was commenced by the issuing of a citation, upon the return of which the executor filed an account of his proceedings, as such, and asked to be discharged as executor, and that the balance of the estate in his hands as executor should be transferred to him as testamentary trustee under said will. The surrogate denied his right to a final accounting and discharge· as executor and held that the accounting was but an intermediate one. He also held that the offices of executor and trustee were co-existent and continuous, and that the executor should retain the estate in his hands as such until the death of Mary A. Webster or

until Mary R. Webster should become twenty-one years of age. He likewise refused to discharge the appellant as executor or to decree that the trust fund be transferred into his hands as trustee under said will. From this determination of the surrogate an appeal was taken by the executor.

*Sam Child*, for the executor, appellant.

*Joseph Atwell*, for Mary A. Webster, legatee.

*J. C. McCartin*, for Mary R. Webster, legatee.

MARTIN, J.:

The questions involved on this appeal are dependent for their solution upon the true construction of the testator's will. If the purpose of the testator, as shown by the language employed in his will, was to blend the functions and duties of the executor and trustee so that they were inseparable, and were to run together from the death of the testator until the appellant's final discharge, the decree appealed from was proper and should be affirmed. If, however, the provisions of the will show that the testator contemplated a severance of the functions and duties of the executor from those of the trustee, then it follows that the decree was wrong and should be reversed.

After making certain bequests to Asahel Read, the testator, by his will, devised and bequeathed to the appellant all the rest and residue of his estate, real and personal, in trust (1) to pay his debts and funeral expenses; (2) to pay the income from the estate to Mary A. Webster during her natural life; and (3) upon her decease to pay over to Mary R. Webster the whole of said estate if she should be twenty-one years of age; if not, when she became of age, and to use the income for her benefit until that time.

That the testator intended to appoint the appellant a testamentary trustee to carry out the provisions of his will, as well as to constitute him the sole executor thereof, is manifest. The will conferred upon him the dual character of executor and trustee. As executor it was his duty to take possession of the estate, collect the debts due the testator, pay his debts and funeral expenses, pay the legacy given by the will, and sell the real estate if he should deem it necessary.

These were his executorial duties. As trustee he was required to keep the residue of the funds belonging to the estate invested, and to pay over the income derived therefrom to Mary A. Webster until her death, and if she died before Mary R. Webster became twenty-one years of age, then to appropriate the income thereof to her use until that time. Upon the death of Mary A. Webster and the majority of Mary R. Webster the trust would end and the appellant would be required, as testamentary trustee, to account to Mary R. Webster for the estate in his hands.

We think the will shows that the functions of the executor and the duties of the trustee were separate. They were not to be executed concurrently and continuously to the end. The duties of the appellant, as executor, preceded his duties as trustee. The former were to be performed before the latter began. The trust, as executor, was ended when the appellant had taken possession of the estate, paid the legacies, debts and funeral expenses, and rendered an account of his trust, as such, to the surrogate. He was then entitled to hold the estate as a trustee under the will. As such testamentary trustee it was his duty to dispose of the income, and ultimately of the *corpus* of the estate, as directed by the will, and to account to his *cestuis que trust* as such testamentary trustee. We think the learned surrogate should have stated a final account with the appellant, made a decree discharging him as executor, and directing a transfer of the estate in his hands, as executor, into his hands as trustee, and awarded him such commissions as he would have been entitled to upon such an accounting and decree.

This conclusion is, we think, fully sustained by the following authorities: *Laytin* v. *Davidson* (95 N. Y., 263); *Matter of Mason* (98 id., 527, 534); *Phœnix* v. *Livingston* (101 id., 451); *Matter of Willets* (112 id.. 289); *Matter of Crawford* (113 id., 560); *Matter of Babcock* (52 Hun, 510).

It follows that the decree of the surrogate should be reversed, with costs payable out of the fund.

HARDIN, P. J., concurred.

MERWIN, J.:

Within the rule laid down in *Johnson* v. *Lawrence* (95 N. Y., 154) I think this is not a case for the separation of the duties of

executor and trustee. From the last clause of the will it is apparent that the testator contemplated that the office of executor should exist till the final distribution. I, therefore, dissent.

Decree of the Surrogate's Court of Jefferson county reversed, with costs to the appellant payable out of the estate.