## In re TYLER'S WILL.

(Surrogate's Court, Steuben County.   April 3, 1911.)

1. WILLS (§ 167*)—REVOCATION.

In order for one to revoke his will, there must be something done by which he recalls or renders his bequest inoperative.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 438; Dec. Dig. § 167.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. WILLS (§ 476*)—CONSTRUCTION—CODICILS.
A will and codicil are to be construed as parts of the same instrument.
[Ed. Note.—For other cases, see Wills, Cent. Dig. § 997; Dec. Dig. § 476.*]

3. WILLS (§ 184*)—REVOCATION.
A codicil is no revocation of a will further than it is so expressed.
Where the codicil contains dispositions inconsistent with the will, the latter will be deemed revoked to the extent of the discordant dispositions.
[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 462–467; Dec. Dig. § 184.*]

4. WILLS (§ 184*)—REVOCATION.
A codicil will not operate as a revocation beyond the clear import of its language, and an expressed intention to alter a will in one particular negatives an intention to alter it in any other respect.
[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 462–467; Dec. Dig. § 184.*]

5. WILLS (§ 184*)—REVOCATION—CODICILS.
Testator gave his wife the use of all his property during her life, and on her death the property, or so much thereof as might remain, to his daughter, and by a codicil provided that, if the wife and daughter could agree, they might sell the land and divide the proceeds. Thereafter testator destroyed the codicil. *Held*, that the codicil did not change the will in any important respect, and its destruction did not cause a revocation of the will.
[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 462–467; Dec. Dig. § 184.*]

Judicial proceedings on the probate of the will of Darius Tyler, deceased. Objections overruled, and will admitted to probate.

Reuben R. Lyon, for petitioner.
W. J. Cheney and Andrew A. White, for contestant.

BURRELL, Acting Surrogate. On January 25, 1902, Darius Tyler made his will, by which he gave his wife, Anna L. Tyler, the use of all of his property during his lifetime, and upon her death then the use of said property, or so much thereof as remained, to his daughter, Cora M. Cole, and upon her death to her son Fred, if living.

The will was properly executed and is now offered for probate by the executrix, Anna L. Tyler, the widow of the deceased, Darius Tyler having died October 19, 1909, and left him surviving, his widow, and Cora M. Cole, his only heir at law. The will is now contested by the heir at law.

It appears that subsequently, the exact date or year not being definitely fixed by the witnesses, but some time afterwards, on an occasion when the testator was ill, he called in a gentlemen by the name of Amasa Nichols, who had been a justice of the peace, and on that occasion, at the request of the testator, Mr. Nichols drew a codicil to the former will, and which he says he attached to the will by using the gummed pieces of an envelope for that purpose. It also appears from the best recollections of the witnesses who were familiar with the provisions of the codicil that it was substantially as follows:

"I desire my wife, Anna, shall have the life use of all of my property and then if they can so agree, the farm can be sold and the money divided as they

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

can agree, and after her death it should go to his daughter Cora M. Cole, should she be alive and if she be dead it was to go to Fred, and then to a third party by the name of Louise Swarthout."

It further appears that shortly before the death of the testator, at a time when Dr. Fitzsimmons was there, he spoke to the doctor in regard to this codicil, and the doctor's testimony is as follows:

"He said he had a paper which he wanted me to destroy. Mr. Tyler told me that he had made a will before that. He got Amasa Nichols to draw a codicil and told Amasa how he wanted it, and said Amasa's head was so thick he didn't get it right, and he wanted to destroy the codicil. He produced it, one or the other of them, and told me I could read it, and I stepped out of the bedroom to the dining room, by the window where there was a good light. It was rather difficult to read. I saw it was a codicil to a will. The date of January 25, 1902, appeared in it. I couldn't read it very readily. I took it back to Mr. Tyler, and I said, 'You want the codicil destroyed and your original to stand as it is.' He said, 'Yes, that is what I want.' He told me to destroy it. I tore it up in a number of pieces, handed the pieces to his wife, and she started out of the room, and I followed her. She went out in the kitchen, and she lifted a kettle off the kitchen stove in which there was a good fire and threw the pieces in there."

It seems to me that the codicil did not change the will in any important respect. It simply tried to confer power on the widow and daughter to sell the farm and divide the proceeds if they could agree. They could have done that without the codicil if they could agree in the matter, and the execution of the codicil was really unnecessary in that particular, and its destruction in the manner testified to did not change the will, much less revoke it. There is no evidence of any revocation clause in this codicil, and its addition to the will did not change it in any material manner, and its destruction left the will as it was, and really as the last will and testament of the testator as he desired it to be.

[1] In order for a party to revoke his will, there must be something done by which he recalls or renders his bequest inoperative at his death. Lathrop v. Dunlop, 4 Hun, 213, 215; Langdon v. Astor, 16 N. Y. 9, 39; Eschbach v. Collins, 61 Md. 478, 48 Am. Rep. 123.

[2] A will and a codicil are to be construed as parts of the same instrument, and [3] a codicil is no revocation of a will further than it is so expressed. Where the codicil contains dispositions inconsistent with the provisions of the will, the latter will be deemed revoked to · the extent of the discordant dispositions, and so far as may be necessary to give effect to the provisions of the codicil. Newcomb v. Webster, 113 N. Y. 191, 21 N. E. 77.

There can be no question in this case but what the paper drawn by Mr. Nichols was a codicil to the will and intended as such, and was by him attached to the will as he testified, to be taken together with the will and to form the complete desire and wish of the testator in the disposition of his property, at his death. It appears that the codicil was not as he had directed, and he subsequently had it destroyed in the manner testified to by Dr. Fitzsimmons. He had a right to do this if he desired.

[4] A codicil to a will will not operate as a revocation beyond the clear import of its language, and an expressed intention to alter a

will in one particular negatives an intention to alter it in any other respect. Wetmore v. Parker, 52 N. Y. 450; Burnham v. Comfort, 108 N. Y. 535, 15 N. E. 710, 2 Am. St. Rep. 462; Matter of Willets, 112 N. Y. 289, 665, 19 N. E. 690; Redfield v. Redfield, 126 N. Y. 466, 27 N. E. 1032.

So far as the deceased is concerned, there is no evidence that he ever intended to revoke the former will. It was his last will, and he wanted it to remain so and directed the destruction of it for that purpose because the codicil was not in accordance with his wishes.

[5] In my view of the case this codicil was really unimportant, as it changed no part of the will. It simply tried to make permissive a sale of the property if desired and the parties could agree. Its existence or destruction worked no material change in the plans of the testator, and to hold in this case that the testator, because he executed this codicil and then destroyed it, by that means actually revoked and set aside and rendered null and void his former will, or, in other words, he died without leaving a will at all, is going further than any case should go, and certainly further than any case to which my attention has been called, which applies to this state of facts.

The will as filed and offered for probate should be admitted to probate as a valid will to pass real and personal property, and letters testamentary should issue to the petitioner, with costs against the contestant.

Ordered accordingly.