In the Matter of the Judicial Settlement of the Accounts of FREDERICK W. BARKER and MARTIN A. KNAPP, as Executors of and Trustees under the Last Will and Testament of JAMES J. BELDEN, Deceased.

THE TITLE GUARANTY AND TRUST COMPANY, as General Guardian of the Estate of BELDEN WIGGLESWORTH and Others, and HELEN WILKINSON and Others, Appellants; FREDERICK W. BARKER and Another, as Executors and Trustees, and Others, Respondents.

Fourth Department, January 15, 1919.

Will — equitable conversion of realty — trust for ten years or for two lives — provision that on death of life beneficiary his share shall go to " lawful heirs," construed — payment of legal interest after expiration of trust period — equitable conversion dates from death of testator — commissions of deceased executor — discretionary power of surrogate to allow commissions — proof of service rendered necessary to award of discretionary commissions.

Where a will worked an equitable conversion of real estate into personalty and gave the executors and trustees a power of sale, the trust to end at the expiration of ten years or upon the death of the first two life tenants, and the testator provided that if any of the life beneficiaries should die before the termination of the trust period the income payable to the one so dying shall be paid to his or her " lawful heirs," and later in the will the testator defined the meaning of the term " lawful heirs " by stating that they shall be deemed to be the persons to whom real estate would descend in cases of intestacy under the laws of the State of New York in force at the time, the testator did not mean that the property equitably converted should descend as real property on the death of a life beneficiary, but on the contrary he intended such share to pass under the Statute of Distribution. The disposition of said property depends upon the intent of the testator to be gathered from the will itself.

Where the will directed payment to the life tenants semi-annually during the trust period, interest at five per cent, the trustees on the expiration of the

trust were justified in paying income at the legal rate of six per cent, the real estate not yet having been sold. This because a legacy draws legal interest from the date of its maturity.

Commissions to be awarded to an executor are to be computed under the law in force at the time of making the award.

The representatives of deceased executors can have no claim for commissions against the estate other than that to which they succeeded upon the death of their testators, for their property rights became fixed at that time and cannot be increased or diminished by a subsequent amendment of the statutes relating to such commissions.

The representatives of executors who died before the amendment to section 2753 of the Code of Civil Procedure (formerly section 2730), made in 1916, are not entitled as a matter of right to one-half commissions based on the valuation of real estate not sold at the time of their testator's death, where said representatives are not accounting, but only the surviving trustees and executors.

However, where a trustee dies prior to complete administration of the trust estate his representatives, in the discretion of the court, are entitled to reasonable compensation for the services performed by the decedent.

Although at the date of the death of the trustees there was no statutory power in the court to award commissions upon real property not sold and distributed, the rule does not hold where the realty was equitably converted into personalty at the date of the testator's death.

The commissions which the court may in its discretion allow to the estate of a deceased executor and trustee must be based upon his actual services and cannot in any event exceed one-half commissions upon the value of the property and no allowance can be justified without proof as to the services actually rendered.

Moreover, the Appellate Division cannot exercise the said discretion in the absence of sufficient proof of the services rendered, but must send the case back for further action by the surrogate.

A party who, on an appeal from a decree of the surrogate upon an accounting, is interested only in a particular fund should only be allowed costs payable out of that fund, the remaining costs to be paid from the funds from the entire estate.

Appeals and cross-appeals by the Title Guaranty and Trust Company, as guardian, and by others, from a decree of the Surrogate's Court of the county of Onondaga, entered in the office of said Surrogate's Court on the 25th day of June, 1917.

*Steele & Otis* [*Edward A. Freshman* of counsel], for the appellant Title Guaranty and Trust Company, as general guardian, etc.

*Herbert L. Smith*, special guardian of Belden Wigglesworth and others, infants, appellant, in person.

*Maurice A. Phelps*, special guardian of John Wilkinson, Jr., and others, infants, appellant, in person.

*Edward L. Robertson*, for the appellants Belden.

*William Ryan*, for the appellant Andrew S. White, as executor, etc.

*Morehouse, Mizen & Morehouse* [*D. P. Morehouse* of counsel], for the respondents David B. Page and others.

*Fleischmann & Pooley* [*Simon Fleischmann* of counsel], for the respondent Kate McCallum Page, as executrix, etc.

*Leroy B. Williams*, for the respondent Gertrude W. Belden.

*Hiscock, Doheny, Williams & Cowie*, for the respondents Barker and Knapp, as executors and trustees, etc.

LAMBERT, J.:

This proceeding is for final accounting in the estate of James J. Belden, deceased. The account is filed in behalf of the two surviving executors and trustees, and the appeal presents several different classes of questions.

James J. Belden died January 1, 1904, a resident of Syracuse, N. Y. His will was admitted to probate by the surrogate of Onondaga county January 11, 1904. By it he appointed Frederick W. Barker, Martin A. Knapp and Cadwell B. Benson as executors thereof and trustees thereunder. He also nominated a substitute trustee, one Theodore A. Page.

Barker, Knapp and Benson all accepted such trust and served in execution thereof until Benson died, January 2, 1915. Page, the substitute executor and trustee, thereupon qualified May 10, 1915, and served until his death, March 5, 1916. Since that time the two surviving executors have administered the trust.

Barker, Knapp and Benson have had three intermediate judicial accountings, in 1906, 1910 and 1911, respectively, and were allowed and paid commissions upon all moneys received and disbursed by them for the periods covered by such accounts. Those payments are not in question here.

The bulk of this estate was the Manhattan Hotel property in New York city. That property was undisposed of at the time of such intermediate accountings, and hence the value of that property was not taken into account in the fixing of the commissions upon the prior accountings.

The will concededly worked an equitable conversion of this property into personalty, and further gave a definite power of sale, with suitable provisions for upkeep and renting, for the period intervening death and sale. The property was not sold, however, until August 1, 1916, when a market was found for it, for the sum of $3,800,000, of which $800,000 was paid in cash, and the balance secured by a mortgage upon the property sold.

In its general scheme (so far as pertinent here) the will, after certain specific bequests, bequeathed the residuum in trust, measuring the trust term by two lives in being and further limiting it to the period of ten years. That is, the limitation was for two lives, unless ten years should sooner elapse. And at the termination of the trust period, distribution was to be made to the legatees therein identified.

The only question urged upon this appeal which directly involves a construction of this will is raised by White, as executor of the will of Anna Belden White, deceased, and involves the following provision of the will:

" After the payment from the income of my residuary estate, in each year during said trust period, of all taxes, * * * my executors shall pay, from the income of my residuary estate, at the expiration of each six months from the date of my death, to the following named relatives and friends the several sums respectively as follows: * * * To each of my nephews, Alvin J. Belden [*Edward M. Belden*] and Charles G. Belden, * * * thirty-seven hundred and fifty dollars ($3750.00). * * * In case any of the persons above named in this Seventh Article of my Will, except said Gertrude W. Belden, said Mary L. Francis and said Kate L. Daly, shall die before the termination of said trust period and whether before or after my own death, the semi-annual sum which the one so dying would have received if living shall be paid to his or her lawful heirs. * * * "

Later in the will the testator defines the meaning of the

term "lawful heirs," as used by him in that instrument as follows: "The term, 'lawful heirs' as used in this Will shall be deemed to be the persons to whom real estate would descend in cases of intestacy under the laws of the State of New York in force at the time."

By other provisions of the will there was also a bequest of $150,000 made to Edward M. Belden, payable at the termination of the trust period. He was likewise made one of the residuary legatees. And such bequests were coupled with the like provision that in case of his death, same should belong to his lawful heirs. Edward died June 12, 1906, and was survived by his mother and three sisters.

Soon following the death of Edward, his mother and sisters made an agreement between themselves as to the proportion of distribution of the accruing income bequeathed to him. Under that arrangement, the mother's interest was computed, upon the basis of her being a life tenant, by inheritance from her son, and upon the principle of life annuities the then present value thereof was computed. It was agreed that such value should be paid to her, and the balance equally divided by the sisters.

The executors paid the income, in accordance with that agreement, until the termination of the trust period. At that time there was an accumulated income of $9,951.89 upon Edward's share, and that income has been directed paid to the mother, under the decree appealed from.

The mother is also determined to be entitled to the life use of the residuary legacy and the legacy of $150,000 also bequeathed to Edward. The correctness of both directions is now questioned by the executor of Anna Belden White, deceased, one of the sisters of Edward, who survived him, but has since died.

The solution of the question turns upon the intention of the testator, as expressed in this connection. The surrogate has adopted the view that the reference to the law of descent of real property, in the definition of the term "lawful heirs," reads into the instrument the intent that the distribution shall occur in the proportion indicated by the law of descent of real property. In this instance, that would be to the

mother (Gertrude W.), for life, and then with remainder over to the three sisters. This conclusion would undoubtedly be correct, if the testator intended that the distribution be made in the proportions provided by section 285 of the former Real Property Law (Gen. Laws, chap. 46; Laws of 1896, chap. 547), which is now section 85 of the Decedent Estate Law (Consol. Laws, chap. 13; Laws of 1909, chap. 18). But such was not the apparent intent of the testator. The will evinces a clear intent to terminate the trust period respecting these legacies at the end of ten years, or the death of the two first life tenants. Then, too, the bequest is of personal and not real property, and it should be distributed as such, unless the testator clearly intended otherwise.

No such intention is to be found in the will. The reference to the law of descent of real property is clearly for the sole purpose of fixing the identity of the persons to take upon the death of the first legatee. Concretely, the provision in question gives such legacy to the mother and sisters of Edward, without specific recital as to the proportion of each. Hence each would take one equal one-fourth part. And this rule of disbursement should apply to all the bequests made to Edward.

Upon this question none of the counsel offers any authorities, and I have not found any. The question is one of intent, and that intent is to be gathered from the will itself.

The decree should be modified accordingly.

The next question relates to income paid to the widow and others from trusts created for their benefit, respectively.

These are well illustrated by that paid to the decedent's widow, Anna G. Belden. The direction of the will was to pay her, semi-annually, during the trust period, interest at five per cent. The trust period expired January 1, 1914. Since that date the trustees have paid her income at the rate of six per cent. The reason for so paying was, that at that time the hotel property had not been sold, and there was no market for it at figures deemed advantageous, and, therefore, the continuation of the trust period became a legal duty. It is also urged that the will made no provision for the rate of interest upon deferred legacies beyond the trust period, and hence, the legacies being due, the legal rate was applicable.

In the determination that six per cent was payable after the

expiration of the trust period, the surrogate was undoubtedly correct. A legacy has many of the attributes of a debt. It has a definite due date. An action at law may be maintained for it. (Code Civ. Proc. § 1819.) And it draws interest at the legal rate from the date of its maturity. (Code Civ. Proc. § 2721; now Code Civ. Proc. § 2688; *Matter of Rutherfurd*, 196 N. Y. 311; *Bank of Niagara* v. *Talbot*, 110 App. Div. 519; affd., 184 N. Y. 576.) The remaining question relates to the award of commissions made to the estates of the two deceased executors, Benson and Page. The surrogate has awarded one-half commissions to each of these estates, based upon the valuation of the hotel property, as fixed by the sale thereof in August, 1916. The propriety of these awards is challenged by each of the appellants.

Apparently the awards were made in the supposition that the executors of these two estates had a legal right thereto. This course was undoubtedly followed, in pursuance of the well-established judicial rule, permitting the payment of one-half commissions for the receipt of property by representatives, and the remaining half upon the distribution of the same property. That practice is firmly engrafted in our decisions. (*Matter of Willets*, 112 N. Y. 289; *Matter of Morgan*, 15 Abb. N. C. 198; *Matter of Roosevelt*, 5 Redf. 601.) We must first then consider the award of these commissions as a matter of right.

At the time of testator's death commissions to an executor were limited by what was then section 2730 of the Code of Civil Procedure to services performed in "receiving and paying out all sums of money." (See Laws of 1895, chap. 595. See, also, Laws of 1905, chap. 328.)

That section was amended and renumbered as section 2753 in 1914, and provided for commissions to executors and testamentary trustees for receiving and paying out money, and further provided that the value of any real or personal property distributed or delivered should be considered as money in making computation of commissions. (Laws of 1914, chap. 443.)

Again, in 1916, this section was amended by the insertion of a provision to the end that the value of any real or personal property, and the increment thereof, " *received*, distributed or

delivered " should be considered as money in making computation of the commissions. (Laws of 1916, chap. 596.)

This latter amendment did not take effect until May 19, 1916, a date subsequent to the death of both Benson and Page.

The general rule is that the commissions to be awarded to an executor are to be computed under the law in force at the time of making the award. If these two executors were now living, there could be no doubt of their right to the commissions upon this property as fixed by the law of 1916. (*Whitehead* v. *Draper*, 132 App. Div. 799; *Robertson* v. *De Brulatour*, 188 N. Y. 301.)

But it must be remembered that these commissions are being sought by the representatives of the deceased executors. They can have no claim other than that to which they succeeded upon the death of their testators. Their property right became fixed at that time. It cannot be increased or diminished subsequent to the dates when these men died.

In the case of *Matter of Worthington* (141 N. Y. 9) it was held that an assignment of commissions prior to their award by decree of the court was a nullity for the reason that the services had not yet been performed which brought those fees into existence as a matter of right.

The same doctrine was enunciated in *Matter of Ziegler* (168 App. Div. 735; affd., 218 N. Y. 544).

As was said in *Matter of Ziegler* (*supra*), discussing the *Worthington Case* (*supra*): " Until his accounts were settled and the services which earned commissions thereby performed, the right to commissions was not vested, but inchoate and not assignable."

It is thus seen that commissions, as a matter of right, do not accrue until accounting. In fact the very wording of section 2753 indicates that commissions, as a matter of right, can only be allowed to an accounting representative. (*Matter of McCormick*, 46 Misc. Rep. 386.)

The representatives of Benson and Page are not accounting in this proceeding. The account is not entitled as their account and they did not subscribe it. It is the account of the surviving trustees, but it does embody an accounting of the transactions of these two deceased trustees.

There has, however, grown up in this State the judicial rule that, when a trustee ceases the performance of his duties as such, prior to complete administration of the trust estate, he is, in the discretion of the court, entitled to reasonable compensation for the services performed. The soundness of such rule is conceded by the opposing parties.

In *Matter of Allen* (96 N. Y. 327) one of several trustees was seeking to resign, and complained of an allowance of commissions to him as being too small. Other parties in interest urged that none at all should have been allowed. The court said: "The principal care may have devolved upon the other trustees, but this is not material. The testator thought proper not only to create the trust, but to require for its execution three trustees, and the law now permits compensation to persons placed in that situation, and who serve to the end of the trust, without regard to the actual trouble or labor to which they have been put. * * * It is true the petitioner cannot claim on that ground. He does not intend to continue. * * * Compensation, therefore, cannot be claimed as of course, and if allowed must also be measured by a different rule from that which the law applies when the trusts * * * have been fully executed." (See, also, *Matter of Douglas*, 60 App. Div. 64.)

The appellants urge, however, because this property was real property, that under the statutes controlling at the dates of death of these two trustees, there was no power in the court to make any award. At that time the statute fixing commissions did not permit the inclusion of real property in the computations, unless it was distributed. This argument is not sound. This will is conceded by every one to work an equitable conversion of the real property involved. The very scheme of the will contemplates and required the conversion of the real property into personalty. And such equitable conversion speaks as of the date of the testator's death. So considered, this property was in legal effect personal property, and hence the argument is inapplicable. In this conclusion I am not unmindful of the case of *Matter of Wanninger* (120 App. Div. 273; affd., 190 N. Y. 527). It is true that that opinion indicates a contrary conception of the effect of equitable conversion upon computation of com-

missions. However, so far as pertinent, the remarks of that opinion are clearly obiter. In any event, if the *Wanninger* case can be regarded as authority, it must be deemed overruled by *Lawrence* v. *Littlefield* (215 N. Y. 561) in which Judge HISCOCK took occasion to say: " When the doctrine of equitable conversion is held to be applicable as in the present case operating to change real estate into personalty, *it is followed out for all purposes of the will.*" (p. 583.)

In *Lawrence* v. *Littlefield* that doctrine was applied to determine the date of commencement of income upon a trust fund to be created out of unproductive real property. Based upon that doctrine, the court regarded equitable conversion as sufficient to start the payment of the income at the date of death, and this, in derogation of the ordinary rule to be applied. It seems to me that such construction, in *Lawrence* v. *Littlefield,* goes much further than it is necessary to go in applying the doctrine of equitable conversion to the award of commissions. The payment of compensation to the representative under the will is to be regarded as one of the purposes of the will, and if such doctrine is to be applied for all the purposes of that instrument, then it must be applied in the allowance of commissions.

In considering the power of the surrogate to allow commissions as a matter of discretion, I do not see how it is important whether this account is presented in form by the representatives of the deceased executors, or not. That might be a pertinent inquiry if the commissions were to be allowed as a matter of right. The account presented to the court sets forth in a general way the trust duties performed by the deceased trustees. All parties interested in the accounting proceedings are before the court and have been heard. In these circumstances I apprehend the court acquired jurisdiction to make an award of commissions. It did so. Commissions were awarded as a matter of right and not as a matter of discretion based upon proof of services rendered. If it be urged that compensation was made as a matter of discretion then the same were unwarranted for failure of proof of the character and benefit of the services performed.

I see nothing in the *Ziegler Case* (*supra*), which is much relied upon by the appellants, that runs counter to my con-

ception that these commissions could not be allowed as a
matter of right, but that reasonable compensation is allowable
as a matter of discretion. In the *Ziegler* case the chief
question was one of double commissions. Full commissions
were allowed to the executors, and then there was effort to
further exact commissions to the trustee, as such. The
decision in the main treats of that question. It also treats
of the right of the trustee to the commissions as a matter of
right, and does not discuss the propriety of some allowance
as a matter of discretion.

It is my conclusion that there may be an allowance in this
case to these representatives, based upon their actual services,
which allowance cannot lawfully exceed, in any event, one-
half commissions upon the value of this property. But it is
also clear that an allowance of that size, to each of these
executors, cannot be justified by this record as a matter of
discretion.

No doubt this court has the power to exercise its discretion
in fixing the amount to be allowed, if the record afforded
sufficient proof to permit such a determination. If we could
so fix it, it would save the necessity of sending the case back
for further action by the surrogate. However, by the supple-
mental decree made, it is apparent that the surrogate deter-
mined that these commissions were allowable as of right, and
did not attempt to exercise any discretion. There is no proof
in the record upon which we could exercise a discretion as
to the value of the services rendered and the case must,
therefore, go back for the taking of proof and passing upon
that subject by the surrogate.

I recommend that the case be remitted to the surrogate
for modification of the decree in the particulars above pointed
out and to make allowance as a matter of discretion to each
of these executors, upon further hearing and taking of proof
as to the extent and value of such services.

It is customary in these cases to make allowance of costs
to such parties as have appeared by attorney and filed briefs.
The number of briefs filed in this instance indicates that the
profession is well aware of that custom. I suggest that a bill
of costs upon this appeal be allowed to each of the parties,
but that in each instance, where the party is interested only

in a particular fund, then that such allowance be paid out of that fund, the remaining costs to be paid from the fund of the entire estate.

All concurred.

Decree modified in accordance with the opinion, and as so modified affirmed, with costs as provided in the opinion.