In the Matter of the Estate of JAMES C. CROPSEY, Deceased.

Surrogate's Court, Kings County, October 10, 1939.

*John B. White,* executor in person, for the motion.

*Cravath, DeGersdorff, Swaine & Wood,* for Peter A. Macdonald and Helen W. Macdonald, as general guardians of the person and estate of James C. Macdonald, an infant, opposed.

WINGATE, S. The present is a second motion for reargument of the decision previously made, that James C. Macdonald, an infant general legatee under the will of the decedent, is entitled to receive interest at the rate of six per cent for the period subsequent to seven months from July 7, 1937, during which his legacy of $5,000 remained unpaid, and that the excess of the sum due in this regard, over that actually earned on the amount of the legacy during the period, was the personal obligation of the executor.

Three questions were presented for determination in this connection, namely, *first,* whether the legatee was entitled to interest on his legacy for the time subsequent to the termination of the executorial period during which payment of his gift was withheld; *second,* if so, the rate at which such interest should be computed; and, *third,* the source of the payment.

The first two questions are answerable by reference to controlling authority. It was said in *Matter of Rutherfurd* (196 N. Y. 311, 315): " Whether the assets of the estate have been fruitful or unproductive does not affect the right of the legatee. He is in the same position as a creditor and entitled to be awarded interest at the legal rate for such time as he is kept out of his demand."

*Matter of Barker* (186 App. Div. 317, 322; affd., as to this point, 230 N. Y. 364) contributes the following: " A legacy has many of

the attributes of a debt. It has a definite due date. An action at law may be maintained for it. * * * And it draws interest at the legal rate from the date of its maturity."

This definitive due date, upon the expiration of which an action may be maintained ·by the legatee, is specified in section 146 of the Decedent Estate Law, and since its amendment in 1933 (Laws of 1933, chap. 634), has been seven months from the date of letters.

The foregoing premises establish, as a logical syllogism, the conclusion that the infant general legatee is entitled to receive interest at six per cent on his legacy from seven months after the date of letters. Lest it be thought that this result enunciates any novel or anomalous rule, it may be noted that, among others, the following authorities, in addition to those hereinbefore cited, have attained the same result: *Matter of McGowan* (124 N. Y. 526, 531); *Wheeler v. Ruthven* (74 id. 428, 431); *Lupton v. Lupton* (2 Johns. Ch. 614, 628); *Matter of Oakes* (19 App. Div. 192, 193); *Clayton v. Kingston* (202 id. 165, 168); *Matter of Harned* (140 Misc. 151, 154; affd., 234 App. Div. 796); *Hoffman v. Pennsylvania Hospital* (1 Dem. 118, 121, 122); *Matter of Runk* (55 Misc. 478, 481); *Matter of Michaelis* (110 id. 185, 188); *Matter of Taft* (143 id. 387, 391; 144 id. 896, 899, 900); *Matter of Ayvazian* (153 id. 467, 477).

Since the infant is unquestionably entitled to this indemnification for the damage which he has sustained, the final question arises as to the source from which it is properly payable. There are three conceivable sources, namely, *first,* from the income earned by the estate during the executorial period; *second,* from the principal assets of the estate; and *third,* from the personal funds of the executor.

Obviously, in so far as the sum withheld from the infant earned income, this is primarily useable for the purpose. In the present case this is professedly, and admittedly, wholly inadequate, wherefore the present controversy revolves about the question of whether the excess should be taken from other income,. from principal, or should be personally paid by the executor. The solution must be sought from the terms of the will and the relevant facts relating to the administration of the estate.

Letters executory were issued on July 7, 1937. The will was commendably simple. Stated in order, its dispositive directions gave (a) the general legacy of $5,000 to James C. Macdonald; (b) a like legacy of $2,000 to the executor; (c) a legacy of $2,500 to the widow; (d) a specific bequest of personal effects to the executor; and, finally, erected a trust of the residue for the widow, with remainder, on her death, $5,000 to the Boy Scouts of America and the balance to this same infant general legatee, James C. Macdonald.

The document concluded with a discretionary power of sale to the executor.

The executor exhibited somewhat striking diligence in the payment of the general legacies other than that to this infant. According to the statement of his account, he paid that of the widow twenty-eight days after his receipt of letters, and his own seven days later. Although more than twenty-seven months have now expired, the legacy of the infant, which was entitled to parity of treatment, has not yet been paid.

As demonstrated by the account, the gross assets of the estate as of the date of death possessed a value of $79,655.37, less $1,600.93, which were worthless, or a net gross (to coin an expression) of $78,054.44. Of this total, $1,879 was specifically bequeathed and $37,100 was real estate, leaving a balance of personalty for the payment of funeral and administration expenses, debts and general legacies of $39,075.44. All of this was actually received by the executor or could have been received by him during the usual executorial period had he elected to sell certain shares of stock before, rather than after, seven months from letters, with the exception of $328.79 which matured only after this period. In other words, he had or should have had in his hands at the end of the executorial period the sum of $38,746.65.

As against this sum, there were chargeable $885.47 for funeral expenses, $426.25 for administration expenses and $8,103.49 for debts, leaving a balance of $29,331.44. Even though it were to be admitted that he was justified in holding out the sum of $8,507.78 for the estate taxes, a preponderant portion of which was allocatable in respect of the residuary real estate, and the generous allowance of $5,000 which is his estimate of the value of his services as attorney for the estate, there would still be a balance of personalty amounting to $15,823.66 from which to pay the general legacies of $9,500 and still leave a reasonable margin for contingencies.

He seeks to exculpate himself for his delay in the payment of the legacy to the infant, despite his strikingly expeditious satisfaction of his own like gift, by the assertion that he did not have the funds for its payment until after he sold the real estate. This position is erroneous as a matter of law. On basic principles, the general legacy to the infant was neither charged upon, nor permissible of payment from, the proceeds of the real estate. (*Bevan* v. *Cooper*, 72 N. Y. 317, 322; *Matter of Lilienthal*, 139 Misc. 225, and authorities cited.)

It follows, therefore, that on the admissions of the account, and as a matter of law, the executor had in his hands at the termination of the executorial period the only assets from which payment of

the legacy was permissible and that these were adequate for the purpose.

Returning to the consideration of which of the three possible sources of satisfaction of the rights of the legatee should be made to respond for the excess liability which has accrued by reason of the failure to make payment when due, the first to be considered is the additional income earned by the estate. By reason of the immediate payment by the executor of his own general legacy and that of the widow, it inevitably follows that this was earned by the residuary estate. The life use of this, however, was given to the widow, wherefore this income constituted the gift made to her. It would obviously be unjust to take any part of it from her because of an improper act in which she did not participate.

The same is true in respect of a deduction thereof from principal. This would effect a *pro tanto* reduction of the income to which the widow is entitled for life, but even more important, since the infant is the remainderman of the trust, it would be taking from him property to which he will ultimately be entitled in a purely colorable compensation for the injury which has been inflicted upon him in depriving him of his legal rights.

The third alternative of a personal charge against the executor may thus be attained by elimination of the other possibilities. Approaching the matter from a positive viewpoint, however, the demonstration of his accounts, as hereinbefore reviewed, indicates that it was amply within his power to have made the payment to the infant at the time it was due. Indeed there appears no sound reason why he should not have accorded the legacy to the infant treatment as favorable as that which he gave his own.

The motion for reargument is accordingly granted and on such reargument the motion for an alteration of the result previously attained is denied, with costs.

Enter order on notice in conformity herewith.