CHARLES GRIFFEN et al., as Trustees under the Will of SAMUEL WILLETS, Deceased, Respondents, v. WILLIAM L. KEESE et al., Defendants, and MARY W. PELL-HAGGERTY, Appellant.

1. JUDGMENT — RES ADJUDICATA. Where a second suit, although between the same parties, is upon a different cause of action, a judgment is not conclusive as to all matters which might have been litigated in the former action, but only as to such points or questions as were actually in issue and adjudicated therein.

2. SAME. A surrogate's decree, in a proceeding for the settlement of executors' accounts, that an annuity fund as then proposed to be constituted by trustees under the will was proper and reasonable to produce the annuities required, from which no appeal was taken, is *res adjudicata* upon the reasonableness of the amount at that time as to all parties to the proceeding and their descendants. A subsequent judgment in an action for a construction of the will, that one of such descendants, made a party to the action, was not entitled to any share in the distribution of the annuity fund as such, and the unappropriated income thereof, either theretofore made or thereafter to be made, in which the question as to the reasonableness of the amount of the fund was not raised and from which no appeal

was taken, is *res adjudicata* upon that issue. While, therefore, such descendant cannot attack the validity of the fund as established by the decree and continued by the judgment, and is prevented from claiming any share in the distribution of the annuity fund as such and the unappropriated income thereof, she may, in a subsequent action for the construction of the will, insist that the annuity fund, which is concededly in excess of that required to produce the annuities, be reduced to a proper amount, and that the excess, together with the unappropriated income thereof, be transferred to the residuary estate in which she has an interest.

3. WILL — TRANSFER TO RESIDUARY ESTATE OF AMOUNT IN EXCESS OF THAT REQUIRED TO PRODUCE ANNUITIES. A testamentary direction to executors to " set apart and invest a fund sufficient to produce the above annuities, or a sufficient amount of stocks to be held for that purpose or a part of each, which fund and the unappropriated income thereof is on the decease of the annuitants as they respectively die to be divided among my grandchildren who shall be living at the time of the death of the respective annuitants, *per capita* and not *per stirpes,* only retaining an amount sufficient to produce the required amount for the remaining annuitants," considering the plain language used and the surrounding circumstances, authorizes the reduction of the annuity fund created by the testator, when it is larger than necessary to produce the surviving annuities, to a proper amount for that purpose, and the transfer of the excess together with the unappropriated income thereof, to the residuary estate.

*Griffen* v. *Keese,* 115 App. Div. 264, modified.

(Argued February 1, 1907; decided February 26, 1907.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 22, 1906, which modified and affirmed as modified a judgment of Special Term construing the will of Samuel Willets, deceased.

On the 6th day of February, 1883, Samuel Willets died a resident of this state, leaving a will and two codicils, which were duly admitted to probate on the 26th day of February, 1883, and by which the testator disposed of a very large estate to many different persons and institutions in various amounts, directly or in trust. He created a number of annuities, aggregating the sum of $10,000 per annum, and for the purpose of erecting an adequate fund for their production he provided as follows: " And I direct that my executors do set apart and invest a fund sufficient to produce the above annui-

ties, or a sufficient amount of stocks to be held for that purpose or a part of each, which fund and the unappropriated income thereof is on the decease of the annuitants as they respectively die to be divided among my grandchildren who shall be living at the time of the death of the respective annuitants, *per capita* and not *per stirpes*, only retaining an amount sufficient to produce the required amount for the remaining annuitants."

By a residuary clause in the will the testator gave to his executors all the residue of his estate in trust, with directions to convert the same into cash which was to be divided into five shares, one of which was to be invested in bonds and mortgages for the benefit of each of the testator's grandchildren, with absolute remainder over to his or her surviving lawful issue, if any, and to the survivors of the testator's grandchildren upon the death of any of them without issue.

The residuary clause was modified by the second codicil, in which the testator declares that in consequence of having made ample provision in other parts of his will for his granddaughter Amelia W. Leavitt and her issue, he revokes so much of the residuary clause as applies to said granddaughter, and directs the division of the residuary estate among the testator's other four grandchildren, their issue or survivors, in accordance with the provisions of the residuary clause.

Of the thirteen annuitants who were the objects of the testator's bounty only twelve survived the testator, and their annuities aggregated $9,500 per annum, while there were only eight of the annuitants living at the time of the commencement of this action in June, 1904, and their combined annuities required a net annual income of $5,400 per annum, which has since been reduced to $5,200 by the death of the annuitant Thaddeus Rich. Other facts appear in the opinion.

*Charles F. Brown* and *Samuel J. Benson* for appellant. The question presented upon this appeal has not been decided in any previous litigation between the parties. (*Stokes* v. *Foote*, 172 N. Y. 327; *Bell* v. *Merrifield*, 109 N. Y. 202;

Black on Judgments, § 610 ; *Bowditch* v. *Ayrault*, 138 N. Y. 222, 231 ; *Matter of Hoyt*, 160 N. Y. 607 ; *Matter of Haight*, 51 App. Div. 310.)

*Wilson M. Powell* for plaintiffs, respondents. By the will the executors were to set apart and invest a fund sufficient to produce the annuities. They were vested with a discretion as to the amount. They have exercised such discretion and have set apart $400,000, by and with the advice and direction and decree of the surrogate. This amount was, therefore, judicially settled, and no appeal therefrom having been taken, the matter is *res adjudicata*. (*Frame* v. *Willets*, 4 Den. 368 ; *Matter of Willets*, 5 Den. 342 ; 112 N. Y. 289.)

*Henry A. Forster* and *Frederick P. Forster* for Edward R. Willets et al., defendants, respondents. The judgment in *Griffen* v. *Willets* is *res adjudicata* that Mrs. Pell-Haggerty is not entitled to any part of the principal or unappropriated income of the annuity trust fund. (*Thorn* v. *De Breteuil*, 179 N. Y. 64 ; *Pray* v. *Hegeman*, 98 N. Y. 351 ; *Cline* v. *Sherman*, 144 N. Y. 601 ; *Leavitt* v. *Wolcott*, 95 N. Y. 212 ; *Lindo* v. *Murray*, 157 N. Y. 697 ; *P. H. Co.* v. *Herriot*, 41 App. Div. 324 ; *Kendall* v. *Hardenberg*, 94 Fed. Rep. 911.) The decree of the Surrogate's Court, upon the executors' accounting, entered in April, 1885, upon notice to all the parties hereto or their predecessors, was an adjudication that the sum of $400,000 should be set aside by the plaintiffs as and for the principal of the annuity trust fund, to be held and applied by them under the provisions of the will relating to that fund. The circumstance that after the decree has stood for twenty years, the Mortgage Tax Law has doubled the income producing power of the annuity trust fund, and that the increased age of the surviving annuitants has reduced the value of their annuities, does not entitle Mrs. Pell-Haggerty, whose father, Frederick Willets, was a party to the decree, to divest the vested rights of the remaindermen in the corpus of the annuity trust fund by claiming that any part of the corpus

of that trust fund should now be diverted into the residuary estate. (*Jewett* v. *Schmidt,* 83 App. Div. 276; 108 App. Div. 322; 184 N. Y. 608; *Cline* v. *Sherman,* 144 N. Y. 601; *Douglas* v. *Cruger,* 80 N. Y. 15; *Lent* v. *Howard,* 89 N. Y. 171; *Cuthbert* v. *Chauvet,* 136 N. Y. 326.)

*John ,L. Cadwalader, George Coggill* and *Edward E. Sprague* for Amelia W. Leavitt, defendant, respondent. The testator confided to the discretion of his executors to decide and set apart what amount would be sufficient to devote to the payment of the annuities. That discretion having been honestly exercised will not now be interfered with by the court. (*Morse* v. *Tilden,* 35 Misc. Rep. 560.) The testator clearly intended that no part of the annuity trust fund should ever pass from that trust to the residuary trusts. (*Cochrane* v. *Schell,* 140 N. Y. 516; *U. S. T. Co.* v. *Soher,* 178 N. Y. 442; *Mason* v. *Jones,* 2 Barb. 229; *Jewett* v. *Schmidt,* 83 App. Div. 276.)

WERNER, J. In form this is an action by the trustees to procure the judicial adjustment of their accounts and to obtain judicial construction of certain clauses of the will from which they derive their powers. In substance it is a contest between the testator's grandchildren and the daughter of a deceased grandchild over the distribution of a portion of the estate which has thus far constituted a part of the annuity fund referred to in the foregoing statement of facts, and which has been decided by the courts below to belong to the surviving grandchildren of the testator, as against the surviving great-grandchild who claims under the residuary clause of the will The precise point and scope of the present controversy will be made manifest by the statement of some additional facts which form a part of the history of the administration of this estate.

In 1885 the executors who had qualified presented their accounts to the surrogate for settlement. All the parties in interest were then before the court, In that proceeding it was

decreed that the executors "pay to themselves, as trustees, the sum of Four hundred thousand dollars as a fund sufficient to produce the several annuities provided for in said will * * * to be held and applied by them under the provisions of said will relating to said fund." At that time the residuary legatees objected that the fund was larger than was necessary to produce the annuities, and the executors asserted that in view of the contingencies of taxation and the fluctuations of interest rates, it could not safely be made smaller. The surrogate adopted the view of the executors and fixed the amount of the fund as above stated. No appeal was taken from this decree, and the executors paid over to themselves as trustees of the annuity fund the sum of four hundred thousand dollars.

Thus matters stood in 1886 when the trustees had presented their annual account in a proceeding in which again all the parties in interest were present or represented. In that proceeding the residuary legatees had again contended that the annuity fund was larger than was necessary to produce the annuities, and again the surrogate had overruled the contention, but apparently upon the ground that the question could only be passed upon in a proceeding instituted for that express purpose. An appeal to the General Term in the first department (44 Hun, 629) resulted in an affirmance of that decree, and then the case came to this court (112 N. Y. 297), where the question was considered as being directly involved. In speaking for the court, the late Judge EARL said: "It is further claimed that the $400,000 set apart to raise the annuities is too large a sum, and that a portion of it should be restored to the residuary fund. It was the duty of the trustees to set apart a sufficient sum to produce the annuities, and the fund should be so large as to provide against all reasonable contingencies and to make sure that it would produce a sufficient sum to pay the annuities. The surrogate, on the accounting of the executors, determined that the $400,000 should be set aside for that purpose. That determination has never been appealed from, and cannot now be reviewed or reversed upon

appeal. But even if it could be, we would feel indisposed to interfere with it. If experience shall in the future demonstrate that the fund is more than sufficient to produce the annuities, the trustees are still under the control of the courts, and may, by proper action of the surrogate or of some other court, be compelled to reduce the amount and restore a portion thereof to the residuary fund."

In 1897 the plaintiffs, as trustees, commenced an action in the Supreme Court against the present appellant and all other persons in interest for an accounting and a further construction of the will. The reasons for the suit seem to have been that a number of the annuitants had died, the most recent decedent having been Sarah A. Willets, and that Mrs. Pell-Haggerty, the present appellant, was claiming, or might claim, a share in that part of the annuity fund which had become distributable by reason of that death. The complaint in that action contained an allegation to the effect that the trustees were unable to determine whether the present appellant was entitled to any share in that portion of the annuity trust fund and the unappropriated income thereof then in their hands, which became distributable upon the death of Sarah A. Willets, and prayed for an adjudication in that behalf. In the answer of the present appellant she submitted her rights to the court. The case was brought to trial before the late Mr. Justice BEEKMAN, who rendered his decision in January, 1898, in which he found as one of his conclusions of law "that the defendant Mary W. Pell-Haggerty, the only child and next of kin of said Frederick Willets, deceased, is not entitled to any share in that portion of the principal of said annuity trust fund and the unappropriated income thereof now in the plaintiff's hands, which became distributable upon the death of said Sarah A. Willets, and that she is not entitled to the portion thereof which her father, the said Frederick Willets, would have been entitled to if he were living, and that the issue, or children, or personal representatives, or assigns of either of the five grandchildren of the testator are not, and will not be entitled to share in any distribution hereafter to

be made of any part of the principal or unappropriated income of the said annuity trust fund, so long as either of said five grandchildren survive. But that the said portion of said principal and the unappropriated income thereof shall be divided and paid over to the survivor or survivors of the said five grandchildren as directed in said will." This conclusion is reproduced in, *hæc verba* in the recitals of the judgment or decree, but is not repeated in the adjudication clauses which simply specify the details of the distribution which result from the legal conclusion. No appeal was ever taken from that judgment which was entered of record on the 28th day of January, 1898.

Since that time the deaths of two other annuitants have intervened, and again the trustees have brought suit to have their accounts passed upon, and to ask the court for instructions as to the further distribution of such portions of the annuity fund and its unappropriated income as became distributable by the death of the annuitant Annie T. Shotwell before the commencement of this suit, and by the death of the annuitant Thaddeus Rich, which occurred *pendente lite.* In their complaint the trustees set forth the various deaths that have reduced the number of the annuitants, the several distributions that have taken place, and then they allege " that the said sum of Four hundred thousand dollars has, in point of fact, been more than sufficient to produce the annuities required by said will, and there has been a surplus of income from said annuity fund which has also been divided from time to time pursuant to the terms of the will." The defendant appellant interposed an answer admitting that the annuity fund had been larger than necessary to produce the annuities provided for in the will; alleging that various distributions have been made as annuitants have died; alleging, further, that there is still in the fund an excess of principal over what is necessary to take care of the surviving annuities, as well as a considerable surplus of unappropriated income, and that the trustees can safely restore to the residuary fund a considerable sum of such principal and unappropriated

income. Such sum, the answer suggests to the court, should then be divided into four parts or shares, one of which should be awarded to the appellant as one of the four surviving residuary legatees. The case was brought to trial before Mr. Justice McCALL at Special Term, who decided that the sum of $271,017.21, which was the amount in the annuity fund at that time, is larger than necessary to provide for the payment of the remaining annuities, and that it could safely be reduced to $100,000; but that the surplus or excess beyond the last-mentioned sum should be divided among the four surviving grandchildren of the testator, in accordance with the terms of the annuity clause of the will, and not among the residuary legatees. An appeal to the Appellate Division resulted in a modification of the judgment entered upon the decision of Mr. Justice McCALL, by fixing the annuity fund at $150,000 instead of $100,000, and as thus modified the judgment was affirmed.

These extracts from the history of the case render it evident that the decision of the very narrow question brought up by this appeal depends: 1. Upon the effect of the previous decisions of the various tribunals in which the different proceedings above recited have been carried on. 2. Upon the proper construction of the annuity clause in the testator's will if none of the previous decisions are binding upon us as *res judicata*.

The respondents contend that the surrogate's decree of 1885, and the judgment in the Supreme Court action of 1897, are both *res judicata*, while the appellant insists that neither of these adjudications is binding in the litigation at bar, in which the question now at issue has for the first time been raised and decided. It is our view that neither of these contentions can be wholly sustained. In the decree of 1885 the surrogate decided that the sum of $400,000 was a proper fund to be set apart by the trustees for the production of the annuities created by the testator. That was a question raised by the objections of the residuary legatees, and one which, being necessarily involved in the accounting, the surrogate

had the jurisdiction to determine. That decree is binding upon all the parties and, so far as it affects the *res*, upon all the world, in every tribunal where the same question is sought to be litigated by the same parties or their privies. All that was decided by the surrogate in 1885 was that the fund as then proposed to be constituted by the trustees was proper and reasonable to produce the annuities. That was the view of this court when, upon an appeal from another decree, it was declared that the decree fixing the amount of the annuity fund in 1885, which had not been appealed from, was a binding adjudication and would remain so until some court having control of the trustees and of the subject-matter should change the amount of the fund. (*Matter of Willets, supra.*) That is what was decided and nothing more. To that extent the decree is binding and no further.

The legal status established by the decree of 1885 remained unchanged when the Supreme Court action of 1897 was commenced. Frederick Willets, one of the grandchildren of the testator having died in 1895, and the question having arisen whether his daughter, the present appellant, was entitled to her father's share in that part of the annuity fund and its unappropriated income which became distributable upon the death of Sarah A. Willets, one of the annuitants who had died in July, 1896, the trustees commenced the action for an accounting that has been referred to, and it was therein decided, among other things, that the present appellant was not entitled to any share in that portion of the annuity fund or the unappropriated income that was then distributable. That is the express purport of one of Mr. Justice BEEKMAN's conclusions of law, and that is the necessary effect of the judgment entered thereon, which directs distribution in accordance with that conclusion. That judgment is to be interpreted in the light of the circumstances then existing, the issues then raised, and the attitude of the then defendant, the appellant in the case at bar. No change had been made in the annuity fund except such as had been wrought by the distributions of principal and unappropriated income, as death

had reduced the number of annuitants. The only issue raised and litigated was whether the defendant Haggerty and the issue, children, personal representatives or assigns of either of the five grandchildren of the testator, were entitled to share in that portion of the annuity fund or its unappropriated income which had become distributable by the death of the annuitant Sarah A. Willets; or in any distribution thereafter to be made so long as either of said grandchildren should survive. The controversy was confined to the disposition of the annuity fund, as such, and it embraced nothing else. There was in the complaint of the trustees no suggestion that the annuity fund was larger than necessary to produce the surviving annuities, and the answer of the defendant Haggerty simply submitted her rights to the court. As to the issue actually decided the judgment in that action is *res judicata*, but it cannot have that effect upon a question which was not then involved and, for aught we know, had not yet then arisen. (*Stokes* v. *Foote*, 172 N. Y. 327.) Neither the record, nor any extrinsic evidence brought to our attention, shows that the question now before us was in fact litigated in the action of 1897. The burden of making this proof rests upon the respondents who rely upon the plea of *res judicata*, and any uncertainty as to what has actually been litigated must inure to the benefit of the appellant. (*Bell* v. *Merrifield*, 109 N. Y. 211.)

It has been sometimes stated to be the general rule that a judgment is conclusive not only upon the question actually contested and determined, but upon all matters which might have been litigated and decided in the same suit. This is doubtless true of all matters properly belonging to the subject of the controversy and within the scope of the issues. But that is not the rule when the second suit, although between the same parties, is on a different cause of action. In such a case the judgment is not conclusive on all matters which might have been litigated in the former action, but only as to such points or questions as were actually in issue and adjudicated therein. (*Cromwell* v. *Sac Co.*, 94 U. S. 351.)

The issue in the suit of 1897 was whether the defendant Haggerty, the present appellant, was entitled to share in the distribution of the annuity fund and its unappropriated income; the issue in the action at bar is whether the annuity fund can be reduced and a portion thereof, together with the unappropriated income, transferred to the residuary estate. There might have been no good reason for urging the reduction of the annuity fund in 1897; while to-day its excessiveness is a conceded fact. The judgment of 1897 is, therefore, binding upon the appellant only to the extent of precluding her from attacking the validity of the annuity fund as constituted in 1885, as continued under the judgment of 1897, and from claiming any share in the distribution of the annuity fund, *as such*, and the unappropriated income thereof, either theretofore made, or thereafter to be made. To that extent the judgment of 1897 is *res judicata*, for those were the precise issues litigated and necessarily decided. (*Rudd* v. *Cornell*, 171 N. Y. 128.)

In the action at bar the courts are now, for the first time, confronted with the direct question whether the annuity fund created by the testator, which is concededly larger than is necessary to produce the surviving annuities, can be reduced to a proper amount, and the excess transferred to the residuary fund; or whether the annuity fund, having been once fixed, can never be changed no matter how excessive it may be. In view of what we have said as to the effect of the former judgments, we may now consider that question in the light of the language of the will. Having created a number of annuities the testator found it necessary to create a fund for their production. His executors were, therefore, directed to set apart and invest "a fund sufficient to produce the above annuities." Not an unlimited fund; not an excessive fund; but a *sufficient fund*. The production of these annuities is the underlying subject-matter of this part of the will. That is the evident purpose of this clause. That is the obvious reason for the fund. The distribution of this fund was clearly not the primary object of its creation; that was to be a mere

incident, because the death of the annuitants, from time to time, would be sure to reduce the income that was necessary, and that would operate to release a part of the fund. The testator's direction as to the establishment of the fund was practically reiterated as to its subsequent maintenance, for the trustees are admonished to retain only " an amount sufficient to produce the required amount for the remaining annuitants." So much for the annuity clause, considered upon its own clear language. When we pass from that to take a view of the testator's personality, the extent of his vast fortune and the minuteness and variety with which he provided for its disposition among the many objects of his bounty, we see even more plainly that it could not have been his intention to create a fixed and immutable fund. He could easily have named the amount to be set aside as an annuity fund, but he did not do it. He left that to the good judgment and discretion of his executors. They established a fund which, at that time, was proper and sufficient, taking into account the then prevailing rates of interest and the then existing methods of taxation. We entertain no doubt that if the fund, as established, had proven too small to carry out the testator's directions, the executors could have drawn upon the residuary estate to make it large enough, for the residuary estate was to consist only of what remained after the testator's specific directions had been complied with. Logically and reasonably, the converse of that proposition must be sound. Whenever the fund proved to be too large for the real purpose of its creation, either the trustees or the residuary legatees could apply to the court for its reduction, and the transfer of the excess or surplus to the residuary estate, where it properly belongs. Such a situation has now arisen. The trustees come into court alleging that the fund is too large. The appellant, as one of the residuary legatees, admits that this is true. No one denies it, and the trial court finds it to be a fact. Under these circumstances, we think that equity and justice justify the conclusion that the annuity fund may be reduced to a proper sum, and the excess above that sum, as well as the

unappropriated income thereof in the hands of the trustees, may be transferred to the residuary estate, to be disposed of in accordance with the provisions of the residuary clause of the testator's will, as modified by the second codicil thereto.

As the judgment disposes of a number of matters to the entire satisfaction of all the parties concerned, and this appeal relates solely to the disposition of the annuity trust fund, our conclusion must result in a modification of the judgment, as modified and affirmed at the Appellate Division, by directing that the matter be remitted to the Supreme Court for the purpose of rendering judgment, that all of the annuity fund and its unappropriated income in excess of $150,000, that being the sum fixed by the Appellate Division, shall be transferred to the residuary fund for distribution according to the residuary clause of the testator's will, as modified by the second codicil thereto ; that the Special Term further take such proofs as may be necessary to ascertain and determine what share the defendant, appellant, Mary W. Pell-Haggerty, may be entitled to in that part of the annuity fund withdrawn and transferred to the residuary estate ; that the Special Term take such further proofs and give such further directions in the premises as may be necessary in view of our decision.   As thus modified the judgment of the Appellate Division should be affirmed, with costs to the appellant to be paid out of the estate.

GRAY, J. (dissenting).   The judgment appealed from was right and just, and it should be affirmed.   To reverse it will be, in my opinion, to defeat the only presumable intention of the testator.   By the provision of his will under consideration, he directed the creation of a fund for two purposes.   It was, in the first place, to provide for the payment of annuities to certain persons named and, in the second place, it was to belong to those members of a class described, who might be living at the death of each annuitant, when a portion would be released.   That was the plain meaning of the careful language used, that " my executors do set apart and invest a

fund sufficient to produce the above annuities, or a sufficient amount of stocks to be held for that purpose, *which fund and the unappropriated income thereof* is, on the decease of the annuitants as they respectively die, *to be divided among my grandchildren* who shall be living at the time of the death of the respective annuitants," etc.

Words cannot express more clearly that the executors were invested with a discretion as to the amount of the fund and that such fund, when it came into existence by their act, was intended to benefit, ultimately, the class of grandchildren, or the survivors of the class. Of course, there can be no pretense that the executors abused their discretion in setting apart a fund of $400,000 ; for their act was confirmed by the court and the decree directing it was not appealed from. (*In re Willets,* 112 N. Y. 289.) It was, then, settled for all time that the sum of $400,000, so set apart, constituted the principal of a trust fund for the annuitants and belonged in remainder to such of the grandchildren· as might survive, according to the terms of the clause. It was a valid trust. (*Cochrane* v. *Schell,* 140 N. Y. 516–533.) It was no longer a part of the general estate and was as much withdrawn from the residuary estate as though the testator had, himself, fixed the amount of the fund, instead of leaving it to the discretion of his executors to fix. The ultimate right to its possession as, from time to time, by the decease of annuitants, portions not needed to feed the existing annuitants were distributable, vested at once in the grandchildren, subject only to the contingency that one or more might fail to survive. This view is enforced by a further consideration that, in disposing of his estate, the testator, at first, after creating the trust for the annuities, had divided his residuary estate into five trusts, one for each of his grandchildren with remainder to his, or her, issue. Subsequently, however, by codicil, the trust for Amelia Leavitt, one of the grandchildren and a respondent here, was revoked ; so that she thereby is remitted to what shall come to her upon the division of the annuity trust fund. Was that a fluctuating and variable interest? It is

quite difficult to understand how the trust fund could, in reason, be so regarded. As soon as it came into existence, the provisions of the will became operative upon it; which is to say, that the five grandchildren, then, became vested with remainders in it, conditioned upon survivorship. Shall the court now hold that this was not their right and deprive them of it, simply, because of the happening of circumstances in the twenty years which have elapsed since the amount of the fund was fixed by the executors and set apart by the decree? This is a proposition which I only consider with gravity, because approved by some of my associates.

But I think, further, that the doctrine of *res judicata* is properly invoked by the respondents in support of their contention. In every material point, the questions have been settled by prior adjudications. The decree of the surrogate upon the executors' accounting, in 1885, which fixed the trust fund at $400,000, was never appealed from and all parties in interest were before the court. In March, 1897, the plaintiffs brought an accounting and construction suit, to have it determined, among other things, whether Mrs. Pell-Haggerty (this appellant) was " entitled to share in that portion of the principal of the said annuity trust fund, and the unappropriated income thereof now in the plaintiffs' hands, which became distributable upon the death of a deceased annuitant  *  *  * and that the said clause in the said Will concerning the said annuities and fund created therefor be construed by this Court in this action." This appellant, Mrs. Pell-Haggerty, answered, claiming whatever rights in the estate " or in the principal of the annuity trust fund " she might be entitled to. The judgment was: " That the defendant Mary W. Pell-Haggerty  *  *  *  *is not entitled to any share in that portion of the principal of the said Annuity Trust Fund and the unappropriated income thereof,*  *  *  * which became distributable upon the death of said Sarah A. Willets, and that she is not entitled to receive the portion thereof which her father, the said Frederick Willets, would have been entitled to if he were living, and that the issue or children or

personal representatives or assigns of either of the five grand-children of the testator are not, and *will not be, entitled to share in any distribution hereafter to be made of any part of the principal, or unappropriated income of the said Annuity Trust Fund, so long as either of said five grand-children shall survive ;* but that the said portion of said principal and the unappropriated income thereof shall be divided and paid over to the survivor or survivors of said five grand-children, as directed in said will." That judgment was not appealed from and, as a construction of this provision of the will, determining the persons entitled to share in any distribution of the principal or unappropriated income in question, it is *res judicata.* To claim, because the con-tention, now made upon this accounting by the executors, is that the principal of the fund should be reduced and the portion, not adjudged to be needed, transferred to the residuary estate, that the prior judgment is not binding seems to me to be trifling with a serious question. The prior judg-ment construed the will and adjudged the principal and unappropriated income to belong to the grandchildren as they might survive. It adjudged that there was an Annuity Trust Fund and who were the beneficiaries in remainder of that fund. Now, this judgment was subsequent to the decision in *In re Willets,* (*supra*), which was upon an accounting by the executors, in 1886. I do not consider the dictum of Judge EARL in that case to be authoritative as to the right to bring an action to reduce the amount of the Annuity Trust Fund. He had held, as to the determination of the surrogate setting apart that fund, that " it has never been appealed from and cannot now be reviewed or reversed upon this appeal. Even if we could," he continued, " we would feel indisposed to interfere with it." What he observed, as to what might be done in the future upon the subject of a reduction of the amount of the fund, was merely suggestive. But, if we give it weight, certainly its authority ceased when, twelve years afterward, the action to construe the will and to have this appellant's interest determined, resulted in the judgment

which I have referred to. The opportunity, at least, was then and there, and all the parties were represented; but the judgment was never appealed from. The court was rendering its judgment upon the present and future disposition of the specific fund before it and adjudged that this appellant had no interest in it.

HAIGHT, VANN and WILLARD BARTLETT, JJ., concur with WERNER, J.; CULLEN, Ch. J., and CHASE, J., concur with GRAY, J.

Judgment accordingly.