In the Matter of the Estate of CORNELIUS VANDERBILT, Deceased.

Surrogate's Court, New York County, May 27, 1929.

*Anderson, Gasser, Ferris & Anderson,* for the petitioner.

*Davis, Polk, Wardwell, Gardiner & Reed,* for Cornelius Vanderbilt.

*Roy C. Gasser,* for Frederick Vanderbilt and others.

*John G. Saxe,* special guardian for Alfred G. Vanderbilt and others.

*Cadwalader, Wickersham & Taft,* for Gertrude Vanderbilt Whitney and others.

*George W. Wickersham* [*George W. Wickersham, Thomas B. Gilchrist* and *Luke B. Lockwood* of counsel], special guardian for Cornelia Szechenyi and others.

*Deering & Deering,* for James R. Deering, as executor, etc., of Reginald C. Vanderbilt, deceased.

FOLEY, S. In this accounting proceeding of the surviving trustee, two questions of construction arise for determination. The testator, Cornelius Vanderbilt, died on September 12, 1899, and this is the first accounting of the trust since the date of his death. An interpretation of the 7th and 8th articles of the will, which created the trust, and the 17th article, which disposed of the residue, becomes necessary.

Paragraph 7 provides: " I also give and bequeath to my said wife the annual income or sum of Two hundred and Fifty thousand dollars, payable to her quarterly, to be computed from the date of my death, and arising from securities to be selected from my estate and set apart by my Executors, and which I give to them to be held in trust for that purpose. If any such securities should be paid off during the continuance of this trust, the amount received therefrom shall be re-invested in similar railroad or other securities to be held by said trustees in place of the securities so paid off."

Paragraph 8 disposed of the principal of the fund as follows: " At the death of my wife the principal set apart under the Seventh Clause of my Will to create the annual payment of Two hundred and Fifty thousand dollars to my wife, shall be given to our children, Gertrude, Alfred G., Reginald C. and Gladys Moore; and if any

then be dead, to their issue, in such proportions and amounts as my said wife may direct or appoint in her last Will and Testament, and in default of such appointment the same shall be divided among our said four children equally, share and share alike, the issue of any such child or children to take its parent's share, *per stirpes* and not *per capita*. Any child born to us after my death shall be entitled to share in this division, and in case of the death of either of said children, without issue, the share of such child is to go to the survivors of such children in equal shares."

The life beneficiary is living and the trust continues. It appears from the undisputed facts that the fund set apart by the trustees to produce the annual sum directed to be paid to the widow has yielded a large amount of excess income for several years past. This amount has been retained by the trustee pending the determination of its proper disposition, and now aggregates a sum in excess of $1,350,000. This amount is claimed, on the one hand, by the executors of the estate of Alfred G. Vanderbilt, the residuary legatee. On the other hand, it is asserted that the surplus income should be paid to the persons presumptively entitled to the remainder of the principal of the fund under the provisions of article 8.

The second question involves the determination as to whether the principal of the fund as now constituted shall be maintained intact or shall, because of the excessive income earned by it, be reduced to a proper amount necessary to produce the fixed annual payment for the widow. It is conceded that the fund now produces an income much larger than is sufficient to pay the specified allowance and the taxes and expenses properly chargeable against it. This excess income for the year from October 1, 1927, to October 1, 1928, amounted to approximately $77,000. The representatives of the presumptive remaindermen assert that the capital of the fund cannot be reduced under the terms of the will. The representatives of the residuary legatee on the other hand rely upon the decision in *Griffen* v. *Keese* (187 N. Y. 454) as authority for the reduction of the capital to a reasonable amount and request the transfer of the excess capital to the estate of the residuary legatee.

*First.* As to the surplus income which has been accumulated in the hands of the trustee over and above the sum of $250,000 per annum, I hold that the amount thereof is now payable to the executors of the estate of Alfred G. Vanderbilt as residuary legatee. I hold further that all surplus income earned in the future during the period of the trust passes likewise under the residuary clause of the will. It will be noted that under article 7 the testator

bequeathed to his wife the " annual income or sum of Two hundred and Fifty thousand dollars." He further directed that the securities be selected and set apart by his executors to be held in trust by them for the purpose of paying the specified annual provision. The latter amount was directed to be paid to her until the time of her death. The theory of the representatives of the remaindermen is that when the trust in article 7 was once established by the executors, it became severed from the rest of the estate, that the legal title was in the trustees and the remainder interests vested in the persons mentioned as remaindermen in article 8, subject to be divested by the happening of the contingencies expressed therein. They claim that the surplus income became part of the trust and was payable to the presumptive remaindermen and that the trust capital likewise could not be increased or decreased during the term of the trust. I find no support for the contention of the representatives of the remaindermen that the surplus income belonged to or became payable to them as the persons presumptively entitled to the next eventual estate under section 63 of the Real Property Law (as amd. by Laws of 1916, chap. 364) which is made applicable to trusts of personal property by section 11 of the Personal Property Law. On the contrary, the will presents a clear and complete disposition of the entire estate of the testator and the surplus income passed, not by operation of law, but by the express command contained in article 17, the residuary clause. That clause reads as follows: " All the rest, residue and remainder of all the property and estate, real, personal and mixed, of every description, and wheresoever situated, of which I may die seized or possessed, or to which I may be entitled at the time of my decease, including all lapsed legacies and the principal of any annuities which may terminate *and any part of my estate which may not have been effectually devised or bequeathed, or from any other source, I give, devise and bequeath to my Executors * * * in trust, * * *."* (Italics mine.) The trust created by that clause was for the benefit of testator's son, Alfred G. Vanderbilt, as life tenant, with directions to pay to him installments of principal at certain ages, and the balance of the entire fund at the age of thirty-five. He attained that age before his death, which occurred on May 7, 1915, and thereby he, and after his death his estate, became entitled absolutely to any part of his father's estate not disposed of by the preceding portions of the will. In *Matter of Kohler* (231 N. Y. 353) a similar controversy arose as to the disposition of excess income above the specified amounts directed to be paid to the daughters of the testator. There the direction was to set aside a sufficient sum to produce

a payment to each of $25,000 annually. Upon the death of the life beneficiaries the remainders of these funds were directed to be paid to a specified class of issue. There were other directions for the payment to each daughter of absolute amounts, which are not material here. The question was presented as to whether the excess income on the capital fund should be paid to the persons presumptively entitled to the next eventual estate under section 63 of the Real Property Law, or should go by virtue of the residuary clause to the legatees named therein. Judge CHASE in his opinion expressed his personal view that the presumptive remaindermen were entitled to the surplus income, but stated that the prevailing determination of the court was in favor of the residuary legatees. He said: "A majority of my associates, however, are of the opinion that, inasmuch as the trustees are only entitled strictly to set aside a trust fund sufficient to produce an annual income of $25,000 in the case of each beneficiary named, any income which may have accumulated between March 16, 1915, and the date when the trusts are actually set aside, or which may be produced after the trusts are set aside in excess of what has been required or may be required to make said annual payment of income provided by the will, should be treated as part of the net residuary estate and be paid over under clause eighteen thereof." The authorities have given full effect to a residuary clause in order to avoid intestacy or to prevent a disposition which would pass by operation of law instead of by command of the testator. The courts, even where the language of the clause is ambiguous, will give it a broad, rather than a restricted interpretation so as to include in the residue every undisposed of part of the estate and this, whether by lapsed legacies, invalid dispositions, omissions or other accident. (*Matter of Cole*, 235 N. Y. 48, 56; *Wright* v. *Wright*, 225 id. 329, 340.)

The residuary clause of a will must ordinarily be construed to make a final disposition of the estate and the residuum of the property is such part as is not disposed of by the preceding provisions of the instrument. Its purpose is to make a final and complete distribution after the particular gifts have been satisfied. (David, Wills, 1171 *et seq.*) It operates to transfer to the residuary legatee such portion of his property as the testator has not perfectly disposed of. (*Albany Hospital* v. *Albany Guardian Society*, 214 N. Y. 435; *Riker* v. *Cornwell*, 113 id. 115.) It conveys not only undisposed of absolute benefits but also undisposed of interest or income. A general residuary clause carries every interest not otherwise given, whether known or unknown, immediate or remote, unless it is manifestly excluded. The intention to include is pre-

sumed and the purpose to exclude must clearly appear from other parts of the will or the residuary legatee will take. (*Floyd* v. *Carow*, 88 N. Y. 560.)

So in the present case, the positive direction granting to the ultimate residuary legatee " any part of my estate which may not have been effectually devised or bequeathed, or from any other source " is clear and sweeping in its effect and carries with it the gift of the surplus income earned by the fund created by article 7 of the will.

In *Griffen* v. *Keese* (*supra*), where fixed amounts were similarly directed to be paid out of a fund set aside and held by trustees, it was likewise held by the Court of Appeals that the surplus income passed as part of the residue and not to the presumptive remainder-men. An examination of the terms of the will of the testator here and the wills involved in *Matter of Kohler* and *Griffen* v. *Keese* fails to support the distinctions claimed by the representatives of the probable remaindermen in the pending proceeding. In each case the capital of the fund was to be held in trust and no technical distinction was made or indicated by the Court of Appeals between an annuity or a direction to pay a fixed annual amount produced by a fund held in trust. In *Cochrane* v. *Schell* (140 N. Y. 516), which is urged as applicable here, there was absolutely no disposition in the will of the excess income. The entire trust fund created was of the residue itself and not a precedent disposition as here. The will failed to dispose of the surplus income and it was held to have passed by virtue of section 63 of the Real Property Law to the presumptive remaindermen. I have considered the contention of counsel of the remaindermen as to the distinction between various expressions and distinctions of language of the clauses involved here and other articles of the testator's will. I regard them as immaterial and without force in arriving at the true intention of the testator. Under the will the gift of income to the widow was fixed, definite and continuous for her life. No specific direction for the disposition of the surplus income was made and it must be determined to have passed under the residuary clause — article 17 — as a part of the estate not otherwise bequeathed. It should, therefore, be paid to the executors of the estate of Alfred G. Vanderbilt.

*Second.* I hold further that by reason of the excessive amount of the capital of the fund, which is yielding far beyond the sum directed to be paid to the widow, it is within the power of the surrogate to direct a transfer of part of the capital assets to the representatives of the residuary legatee. *Griffen* v. *Keese* (*supra*) and a preceding determination of the Court of Appeals in the same

estate (*Matter of Willets*, 112 N. Y. 289) are directly in point. It appears beyond dispute that the present capital of the fund taken at the market value of the securities as of October 31, 1928, was slightly in excess of $7,000,000. The excess income above all requirements of this fund for the last year accounted for exceeds $77,000, and the average surplus of income for the past five years approximates $47,000 per year.

In *Griffen* v. *Keese* (*supra*) it was stated in the opinion that for the first time the direct question arose " whether the annuity fund created by the testator, which is concededly larger than is necessary to produce the surviving annuities, can be reduced by a proper amount, and the excess transferred to the residuary fund; or whether the annuity fund, having been once fixed, can never be changed no matter how excessive it may be." In the will in that case there was a similar direction to that in Mr. Vanderbilt's will requiring the setting apart of securities to produce the annuities. The court pointed out that the testator, with a large fortune, could easily have named the amount of capital to be set aside as an annuity fund, but he did not. The amount was left to the good judgment and discretion of the executors. The dominant purpose of the testator there, as in this estate, was to provide an adequate fixed annual allowance for the life beneficiary. The setting aside of sufficient capital was subordinate and necessarily subject to approximation. There, as in the present estate, the fund set aside was reasonable and sufficient at the time of its establishment, but the passage of time developed increased value of capital and a consequent increase of income. Judge WERNER says in the prevailing opinion: " Whenever the fund proved to be too large for the real purpose of its creation, either the trustees or the residuary legatees could apply to the court for its reduction, and the transfer of the excess or surplus to the residuary estate, where it properly belongs. Such a situation has now arisen * * *. Under these circumstances, we think that equity and justice justify the conclusion that the annuity fund may be reduced to a proper sum, and the excess above that sum, as well as the unappropriated income in the hands of the trustees, may be transferred to the residuary estate, * * *."

The annuity provisions in the will in the *Griffen* case and the remainder gift were very similar to the dispositions contained in the Vanderbilt will. In the will in the *Griffen* case the " fund and the unappropriated income thereof " were directed to be divided on the death of the life tenants among the surviving grandchildren. Here " the principal set apart " is given at the death of the wife to the children or the issue of deceased children subject to a limited

power of appointment in the widow. The rule permitting reduction of an excessive fund is restated in *Matter of Kohler* (*supra*, 376), citing the *Griffen* and *Willets* cases. Judge CHASE points out that where through " fraud, inequity or mistake " the fund is found to be too.small or too large it can be changed by the appropriate court. Certainly inequity exists in the present situation by reason of the very excessive capital and the unreasonably large income produced by it.

Assurance against all reasonable contingencies must be safe-guarded. Without passing, at this time, upon the exact amount of the reduction of principal, it is clear that the present capital of the fund is unreasonably large. Equity and the rights of the estate of the residuary legatee require its reduction to a reasonable figure. For the purpose of arriving at such reasonable reduction the trustee and the other parties may submit proof and present argument on the day hereinafter fixed.

*Third.* My disposition of these questions of construction compels the overruling of many of the objections to the account contained in the answers filed by the presumptive remaindermen. These objections fail because of the absence of any interest of the objectants in the accumulated excess income. The objections made to the failure of the trustees to set up a larger fund are also overruled. The procedure adopted by the trustees to meet the deficit in income in the earlier years of the trust by transfer from the corpus of the residuary trust, I hold was proper under the terms of the will.

Proceed accordingly.

On June 14, 1929, the following opinion was filed:

FOLEY, S. My original decision herein determined that the fund set aside by the executors, and now retained by the surviving trustee under paragraphs 7 and 8 of the will, was unreasonably large and required a reduction. In accordance with the directions contained in that decision (134 Misc. 574), certain additional proof has been submitted as to the excess income and capital of the fund. Upon all of this proof I find as a fact that the capital of the fund is unreasonably large at the present time by the sum of $664,703. This amount is the market value of certain securities as of June 7, 1929, now held by the trustee.

The executors and trustees of the estate of Alfred G. Vanderbilt, the residuary legatee, contend that a larger amount of securities may be transferred to them without peril to the trust fund. Under their original computation the transfer of these securities would involve the reduction of the income of the trust by $35,582, which

would leave at the present rate of earning a gross income of $275,201.

The representatives of the infant beneficiaries under the will of Alfred G. Vanderbilt contend for an even greater reduction of the principal of the trust fund.

I have carefully considered these various claims and the necessity for the protection of the respective rights of the remaindermen and of the estate of the residuary legatee and am of the opinion that the retention of securities to yield a current annual income of $280,001 is sufficient to meet reasonable contingencies. Therefore, securities of the market value fixed above by me — $664,703 — will be transferred out of the trust to the estate of the residuary legatee, where they properly belong. The excess income thereon will amount to $30,782. The market value of the securities retained in the fund as of June 7, 1929, will be $6,888,172.09.

The margin of safety of income over the requirements of the annual payment to the widow of $250,000 will be $30,001. The only charge against this surplus at the present time (aside from taxes) is approximately $2,000, which is the annual expense of the administration of the trust fund. An examination of the income of the fund actually received for the past twenty years indicates the stability and regularity of earnings. Notwithstanding the years of financial depression, the occurrence of the World War, and the period of readjustment thereafter, the fund has regularly earned a large excess over the fixed annual charges against it. These factors have been considered by me in arriving at a reasonable deduction of principal and income. In accordance with my original decision the excess income received by the trustee above the annual allowance and expenses should be paid to the estate of the residuary legatee.

The method of allocation and the transfer of the specific securities suggested by the executors of the estate of Alfred G. Vanderbilt, which are set forth in their supplemental exhibits filed herein, are approved.

All the objections filed by the representatives of the remaindermen of the trust fund are overruled.

Tax costs. Submit decree on notice construing the will, settling the account, directing delivery of the securities and the payment of the accumulated income and surplus income in accordance with my decision herein.