In the Matter of the Estate of WILLIAM HARTFIELD, Deceased.

Surrogate's Court, Kings County, February 10, 1931.

*Louis H. Hahlo,* for the petitioners.

*Ernst, Fox & Cane* [*Benjamin Tuska, Bernard M. L. Ernst* and *Pincus Berner,* of counsel], for The Educational Alliance, a legatee.

*John T. Magan,* for Seton Hospital, legatee.

*Hoadly, Lauterbach & Johnson,* for The Mount Sinai Hospital, legatee.

*Emmet, Marvin & Martin,* for Home for Incurables, legatee.

*Davis, Polk, Wardwell, Gardiner & Reed,* for Saint John's Guild, legatee.

*Cardozo & Nathan,* for the Jewish Social Service Association, Inc. (formerly United Hebrew Charities), legatee.

*Stroock & Stroock,* for Montefiore Hospital for Chronic Diseases, legatee.

*Cohen & Roeder,* for Beth Israel Hospital, legatee.

*Hurray & Dutton,* for Trustees of the Masonic Hall and Asylum Fund, legatee.

*Strasbourger & Schallek,* for the Hebrew Orphan Asylum of the City of New York, legatee.

*Curtis, Mallet-Prevost, Colt & Mosle,* for Lenox Hill Hospital, legatee.

*Frederick A. Keck,* special guardian for Marjorie Goldsmith, Lulu Jorgense and others, infants.

WINGATE, S. The question of testamentary construction here raised concerns certain portions of the residuary directions of the will of this decedent, which was admitted to probate on July 17, 1925.

By the " twenty-third " item of the will the testator devised and bequeathed the entire rest, residue and remainder of his property to his executors in trust, directing them in subparagraph " b "

to pay an annual income of $5,000 to Norman Pendlebury until he attained the age of thirty-five years, at which time one-fourth of the principal of the residuary estate was to be paid over to him. Certain alternative directions were made for the payment of this principal contingent upon the decease of Norman Pendlebury before attaining the stipulated age, but they are not now material as he is still alive. In subparagraph " c " of this item, the trustees were directed to pay the balance of the net income from the residuary estate to testator's brother, Henry Hartfield " during his life," it being further provided that if the income from the balance of the residue should be insufficient to make up $5,000 a year, the principal should be invaded for that purpose. Upon the brother's death, which has now occurred, the portion of the residue held in trust for his life, namely, the three-quarters remaining after the deduction of Norman Pendlebury's one-fourth, was directed to e paid over to certain specified remaindermen.

The " twenty-fifth " item of the will read as follows: " In the event that any bequests hereinbefore made shall fail or lapse, I direct that the amount thereof shall be added to and become part of my residuary estate, and shall be disposed of accordingly."

The immediate question here raised concerns the disposition, following the death of testator's brother, Henry Hartfield, of the excess above $5,000 of the annual income arising from the one-fourth of the residuary estate, the principal of which will be payable to Norman Pendlebury upon his attaining the age of thirty-five years. For some years the income from this one-quarter has amounted to approximately $6,500. Prior to the brother's death this excess was, of course, payable, by express direction of the will, to the brother, by reason of the gift to him of all income from the residue exceeding $5,000 in amount, but since this gift terminated upon his death, its devolution is now a matter of concern.

There are three claimants to the fund, *first*, the remaindermen who are presently entitled to receive in possession the principal of three-quarters of the residue following Henry Hartfield's death; *second*, the executors of Henry Hartfield, who claim that this income is not validly disposed of in the will and that it passes as intestate property to their decedent who was testator's next of kin; and *third*, Norman Pendlebury, who upon attaining the age of thirty-five years will become entitled to the principal fund from which the income is presently derived.

In approaching the solution of the problem it is necessary first to analyze precisely what the testator accomplished in his residuary gifts of income and principal. He had two things to give, *first*, the final possessory right to the residue of his estate, and, *second*,

the use thereof for not exceeding two lives in being at the time of his death. He elected to divide the ultimate possessory gift into two parts respectively of one-quarter and three-quarters of the fund, and he further chose to make separate gifts of the income to be derived from the principal prior to its final vesting in possession. To Norman Pendlebury he conditionally gave the possessory right of one-fourth of the principal and he also gave to him the income from the entire fund to the extent of $5,000 during the joint continuance of his life and that of Henry Hartfield. He gave to the remaindermen of the Henry Hartfield trust the ultimate possessory right of the balance of the residue, and he gave to Henry Hartfield the balance of the income from the entire fund after the payment of the $5,000 to Pendlebury.

It seems reasonably apparent that the only contingency not covered by the testamentary directions was that which has occurred, namely, that the income from the one-fourth of the residue set aside for Pendlebury would amount to more than $5,000 and that the latter should survive his brother. This omission was immaterial during the life of Henry Hartfield since he was given all income remaining after the payment of the $5,000 to Pendlebury. There is, however, no express gift of such excess income to any person after the brother's death. It is not given to Pendlebury as the gift of income to him is limited to $5,000. It is not expressly given to the remaindermen since they are merely entitled by the terms of the will to distributive shares of the principal fund of the three-quarter interest in the residue of the estate. It must, therefore, be concluded that unless it can pass by virtue of the general residuary gift, it is property concerning which the testator has given no direction.

The remaindermen base their rights on the language of the 25th item of the will, to the effect that any legacies which fail or lapse shall fall into the residue, and upon the determination of the Surrogate's Court of New York county in *Matter of Vanderbilt* (134 Misc. 574; affd., 229 App. Div. 574).

The former contention loses sight of the fact that the failure here present is the omission by the testator validly to dispose of a portion of the residue of his estate and not a failure or lapse of a prior benefaction. It is one of the most primary principles of testamentary construction that such a failure in a residuary bequest does not go to augment other residuary gifts, but in the ordinary case passes as intestate property. Literally a score of cases authoritatively determining this point might be cited. It will suffice to call attention to a few of the more outstanding ones: *Floyd* v. *Barker* (1 Paige, 480, 482); *Beekman* v. *Bonsor* (23 N. Y.

298, 312); *Kerr* v. *Dougherty* ·(79 id. 327, 346, 347); *Hard* v. *Ashley* (117 id. 606, 616); *Booth* v. *Baptist Church* (126 id. 215, 245); *Cochrane* v. *Schell* (140 id. 516, 537); *Morton* v. *Woodbury* (153 id. 243, 257); *Matter of Hoffman* (201 id. 247, 254); *Wright* v. *Wright* (225 id. 329, 340).

As the court points out in *Cochrane* v. *Schell* (140 N. Y. 516, at p. 537), " where the devise or gift was of a residue, as to part of which the disposition fails, that part will not accrue in augmentation of the remaining part, as a residue of a residue, but instead of retaining the nature of residue, devolves as undisposed of."

*Matter of Vanderbilt,* above referred to, is in no wise applicable to the case at bar. There, testator directed that a sufficient fund be set up to pay his widow the sum of $250,000 a year. In a later paragraph he gave the residue of his estate to his son. The trustees in erecting the trust for the wife set aside securities which yielded a considerably greater income than $250,000 and this decision soundly held that by their act the trustees had exceeded the authority given them by the terms of the will, in effect diverting a portion of the estate validly given to the remainderman. It followed, therefore, that since this excess income was by express direction of the testator payable to the son, as residuary legatee, it must be paid over to him. The rule in this case, while unquestionably sound, has no more application to the case at bar than the rule in *Shelly's* case. It is apparent, therefore, that there is absolutely no basis whatsoever for the claims of the remaindermen of Henry Hartfield's trust to the excess income in the case at bar.

As noted, the testator simply failed to give any direction regarding the manner of disposition of any income in excess of $5,000, which might be derived from the one-fourth of the residuary estate conditionally given to Norman Pendlebury. Under ordinary circumstances, this might well result in an intestacy, which is the result sought by Henry Hartfield's executors. Under the facts here disclosed, however, the provisions of section 63 of the Real Property Law (as amd. by Laws of 1916, chap. 364) intervene and prevent such intestacy. So far as pertinent, this enactment reads: " Undisposed profits. When, in consequence of a valid limitation of an expectant estate, there is a suspension of the power of alienation, or of the ownership, during the continuance of which the rents and profits are undisposed of, and no valid direction for their accumulation is given, such rents and profits shall belong to the persons presumptively entitled to the next eventual estate."

That this section is made applicable to personal property by

the provisions of section 11 of the Personal Property Law (since amd. by Laws of 1929, chap. 229) was authoritatively determined in *Matter of Harteau* (204 N. Y. 292, at p. 300).

It is entirely apparent that Norman Pendlebury is presently the owner of a contingently vested estate in this one-fourth of the remainder from which the income in question is derived. Under all of the pertinent decisions on the subject, he is the person presumptively entitled to the next eventual estate within the terms of the statute (*Matter of Kohler*, 231 N. Y. 353, 376), and must, therefore, receive the excess income in question. (*Cochrane* v. *Schell*, 140 N. Y. 516, 537, *et seq.*; *Matter of Kohler*, 231 id. 353, 376; *Matter of Doherty*, 227 App. Div. 265, 268; *Matter of Segura*, 110 Misc. 624, 626, 627; *Matter cf Eickelberg*, 135 id. 581, 584.)

Proceed accordingly.