In the Matter of the Estate of JOHN S. ADRIANCE, Deceased.

Surrogate's Court, New York County, February 8, 1936.

*Whitman, Ranson, Coulson & Goetz* [*Charles S. Whitman* and *William G. Chambers* of counsel], for the respondent, Henry B. Adriance.

*Sheppard, Jones & Seipp* [*John S. Sheppard* and *Henry G. Seipp* of counsel], for Vanderpoel Adriance, Jr., individually and as administrator c. t. a.

FOLEY, S. This is an accounting by the administrator c. t. a. in which a construction of the will is sought.

The testator died in Wales, Great Britain, on January 5, 1934, leaving a will executed December 14, 1932. Although the will contains a declaration that the testator was domiciled in England, it has been conceded that he was domiciled in New York county. His will was admitted to probate by this court on August 15, 1934, as the will of a resident decedent. The executors and trustees named therein were non-resident aliens, and being incapable of acting they renounced their rights to appointment. Letters of administration c. t. a. were accordingly issued to a nephew of the decedent who is the residuary legatee under the will.

In addition to containing a declaration that the testator was domiciled in England, the will further provides: " I desire my Will to be construed and to take effect according to English Law."

The first paragraph of the will provides for the appointment of the executors and trustees.

The second paragraph provides as follows: " I declare that in the interpretation of this my Will the expression ' my Trustees ' shall (where the context permits) mean and include the trustees or trustee for the time being hereof, whether original or substituted, and if there shall be no such trustees or trustee, shall (where the context permits) include the person or persons empowered by statute to exercise or perform any power or trust hereby or by statute conferred upon the trustees hereof and willing or bound to exercise or perform the same."

The remaining provisions of the will which are pertinent to the issues raised provide as follows:

" 3. I bequeath the following pecuniary legacies free of legacy duty and all other (if any) duties payable upon or by reason of my death: * * *

" (b) To my brother, Dr. Vanderpoel Adriance a life annuity of 5,000 (Five thousand) American dollars.

" (c) To my brother Henry B. Adriance a like life annuity of 5,000 (Five thousand) American dollars. * * *

" 5. I devise and bequeath all the residue of my real and personal estate whatsoever and wheresoever not hereby or by any codicil hereto otherwise specifically disposed of unto my trustees upon trust to sell, call in and convert the same into money (with power in their discretion to postpone such sale, calling-in and conversion) and after payment thereout of my debts, funeral and testamentary expenses to stand possessed thereof to pay the capital to my said Nephew Vanderpoel Adriance Junior.

" 6. I direct my Trustees to appropriate in respect of each of the aforesaid life annuities in their names investments of any nature of an amount sufficient at the date of such appropriation to answer out of the income thereof the annuity in respect of which such appropriation is made but in the event of subsequent deficiency of income, the capital of the appropriated fund is to be liable. The balance (if any) of the income of each of the appropriated funds not required in any year for answering the annuity in respect of which the fund was appropriated shall be part of the income of my residuary estate and shall be distributed accordingly. After such appropriation my residuary estate to be free of the said annuities."

Two major questions are presented for determination:

(1) Do the provisions of the will create valid trusts?

(2) Are the annuitants entitled to elect to take the capital sums which are directed to be set aside to produce the annuities?

The administrator c. t. a. contends that the will effectuates the gifts to the brothers by the creation of two valid trusts and that as residuary legatee he is the remainderman of these trusts. This contention is opposed by one of the testator's brothers, Henry B. Adriance, who maintains that the gift for his benefit is an absolute annuity and that no valid trust is created by the will.

The terminology employed by the testator is indicative of an intention on his part to create testamentary trusts. Trustees are appointed in the first paragraph of the will. Substituted trustees are contemplated and provided for by the second paragraph of the will. The sixth paragraph of the will directs the trustees to appropriate investments sufficient to produce each annuity and further directs the trustees to hold such investments in their names.

In addition to the use of this terminology which clearly contemplates the existence of trust duties, the general plan of distribution under the will further discloses the testator's intention to create two valid trusts. The gift of the annuity to each of the testator's brothers is contained in the third paragraph. The sixth paragraph provides a method by which these gifts are to be effectuated. This method is the allocation by the trustees of

investments to be held in their names sufficient to produce an income to pay each annuity. If income is insufficient during any period, the capital of the appropriated fund may be resorted to. In *Griffen* v. *Keese* (187 N. Y. 454) similar provisions were held to create a trust to produce annuities. The sixth paragraph of the will further provides that if the income from the appropriated fund is more than sufficient to pay the annuity, such surplus income should be paid to the residuary legatee. This language is especially significant of the testator's intention to effectuate the gifts of the annuities by the creation of trusts. This gift of surplus income can be construed in no other light than as the gift of income from a trust.

The testator's plan is complete and covers every possible contingency. After each fund is appropriated, the annuity will be paid in any event, whether or not sufficient income is produced. If income is received in excess of the amount necessary to pay the annuity, such surplus income is disposed of. The last sentence of the sixth paragraph of the will frees the residuary estate from the charge of these annuities which would ordinarily exist. This plan of distribution is only compatible with an intention on the part of the testator to create separate trusts to produce each annuity. (*Griffen* v. *Keese, supra; Cochrane* v. *Schell*, 140 N. Y. 516.)

The determination of the second question as to the right of an annuitant to receive a capital sum involves the nature of the annuities bequeathed by the will.

The will was drawn by an English solicitor and must be construed under English law in accordance with the direction of the testator.

Under English law annuities are divided into two general classes: (1) Life annuities, and (2) perpetual annuities. (Jarman Wills [7th Eng. ed.], chap. XXXI; *Blight* v. *Hartnoll*, L. R. 19 Ch. Div. 294; *Kerr* v. *Middlesex Hospital*, 2 DeG., M. & G. 576; *Yates* v. *Maddan*, 3 Macn. & G. 532; *Stokes* v. *Heron*, 12 Cl. & Fin. 161.)

A life annuity may be identified when it is so termed or where there is a gift of an annuity *simpliciter*. (24 Halsbury Laws of England, § 948; Jarman Wills [7th Eng. ed.], chap. XXXI, p. 1101; *Blight* v. *Hartnoll*, L. R. 19 Ch. Div. 294.)

A perpetual annuity may similarly be identified by being so termed. It may also be identified by language indicating an intention that the annuity is to continue beyond the life of the annuitant, as where the annuity is given to a person " and his descendants." A direction to purchase an annuity in government securities and a gift of income without limitation as to time, with

no disposition of the principal, also indicate the existence of a perpetual annuity.

Henry B. Adriance here contends that the gift to him is a perpetual annuity and that he is entitled to receive a capital sum in lieu of such annuity.

Under English law an annuitant is entitled to a lump sum payment, (a) where there is a direction to purchase the annuity, or (b) where the annuity is given from the income of a fund without limitation of time and with no disposition of the principal of the fund. (*Ford* v. *Batley*, 17 Beav. 303; *Matter of Smith*, 130 L. T. 185; *Stokes* v. *Heron, supra; Kerr* v. *Middlesex Hospital, supra.*) The factual circumstances under which an annuitant is entitled to receive a capital sum are clearly and succinctly set forth by Lord Halsbury in his work on the Laws of England (Vol. 24, §§ 937 *et seq.*).

Under English law a life annuitant may only receive the capital value of his annuity where there is a direction or a power to purchase the annuity.

The gift here to each of the testator's brothers is a life annuity and not a perpetual annuity. Each is termed " a life annuity " by the testator. In England, as in this State, words are to be construed in their ordinary sense unless a clear intention to the contrary can be discovered. (Jarman Wills [7th Eng. ed.], p. 2146.) The draftsman of the present will was plainly familiar with English legal terminology. The will must be construed in that light. There is strong implication, therefore, that the term " life annuity " was employed in accordance with its well-defined meaning under English law. In *Hicks* v. *Ross* (L. R. 14 Eq. 141) the court stated that a gift of " £50 per annum during her life " was clearly a life annuity. In *Rawlings* v. *Jennings* (13 Ves. Jr. 39, 45) the court pointed out that " where the testator meant to give an interest for life only, he has done so in the plainest terms; using the words, as in the bequest of the annuity to his daughter, ' during her natural life.' "

There is no merit in the respondent's contention that the fund segregated to produce his annuity is not otherwise disposed of by the will. The fifth paragraph of the will is a general residuary clause and comprehends the entire residue. It was to go ultimately to the testator's nephew, Vanderpoel Adriance, Jr. As previously stated, the sixth clause of the will prescribes the method of effectuating the gifts of the annuities. This method is the temporary segregation from the residue, already bequeathed, of securities sufficient to produce the annuities. Permanent separation of the entire fund was not intended. Upon the termination of the lives

of the annuitants, the corpus passes as a part of the residue. The provision for a temporary segregation of these funds frees the balance of the residue from the charge of the annuities which would otherwise be in effect. By this method the balance of the residue might be immediately distributed to the designated legatee. The fund appropriated from the residue to produce each annuity cannot be distributed until the death of the annuitant. The general residuary clause is sufficient to bequeath the remainders of the trusts for the production of the annuities. It is immaterial that the residuary clause precedes the direction to appropriate the funds from the residue. (Jarman Wills [7th Eng. ed.], pp. 1001, 1002, 1006.) There is no intestacy. Intention to die intestate will never be presumed, particularly where the will contains a general residuary clause.

I hold, therefore, that the annuitants are not entitled to receive either the funds segregated to produce their annuities or the actuarial capital value of the annuities. The gifts are life annuities. There is no direction to purchase. The gifts are not without limit as to time. The fund dedicated to the production of each annuity is disposed of by the will.

The law of this State as to an annuitant's right to receive the capital value of his annuity is similar to the English law. There must be either a direction to purchase or some clear provision of the will disclosing that the fund to produce the annuity is irrevocably dedicated to that purpose and is otherwise undisposed of. (*Matter of Proctor*, 235 App. Div. 6; *Matter of Oakley*, 142 Misc. 1.) Both of these cases cite and discuss the English authorities and hold that annuitants have no right to receive a capital sum on facts substantially similar to those presented here.

A separate application for the appointment of a substituted trustee was heretofore instituted by the administrator c. t. a. The issues raised in that proceeding were reserved for determination in this accounting proceeding by my previous decision (N. Y. L. J. Oct. 9, 1935). In view of the determination herein made that the will creates two valid trusts, the application for the appointment of a substituted trustee is granted. The petitioner will be appointed substituted trustee upon his filing a bond in an amount to be fixed on the settlement of the decree.

The further question raised by the respondent as to the remainder interest in an *inter vivos* trust is not properly before the court and will not be decided.

Submit decree on notice construing the will, settling the account and providing for the appointment of a substituted trustee in accordance with this decision.