AMY P. STATTER, Respondent, *v.* HUMPHREY STATTER, Appellant.

First Department, July 3, 1956.

*Milton Paulson* for appellant.

*Mahlon Dickerson* of counsel (*John H. Reilly, Jr.,* with him on the brief; *Satterlee, Browne & Cherbonnier,* attorneys), for respondent.

BREITEL, J.   The question in this case is whether the husband's prior separation judgment is a bar to the wife's present action for annulment on the ground of void marriage, the husband having had, at the time of his marriage to plaintiff wife, a former wife living, and the former marriage then being in force (Civ. Prac. Act, § 1134).

The instant wife's complaint was sustained at Special Term, the husband having moved to dismiss on the ground that there is an existing final judgment of a court of competent jurisdiction rendered on the merits, determining the same cause of action between the parties (Rules Civ. Prac., rule 107, subd. 4).

The order denying the motion to dismiss the complaint should be affirmed.   The action for annulment is not based on the same cause of action as the husband's prior action for separation, and the wife is not estopped by the prior judgment from now establishing the nullity of the instant marriage.

The parties to this action were married in New York in 1944. There are two children, born in 1946 and 1947.   The parents separated in 1952.   In 1953, the husband sued in New York for a separation based on cruelty and abandonment.   In the prior action, the only issue actually litigated and judicially determined (as distinguished from the pleadings and the findings based

thereon) was that of abandonment. The husband succeeded. The wife, however, was awarded custody of the children. No provision for their support was requested or made, because, said the court at that time, the wife was "financially independent, her property and income being very substantial and apparently greatly in excess of plaintiff's [husband's] property or income, and hence no problem of support is involved".

The husband, supposedly, had been married to one Kate Oglesby in 1940. This marriage resulted in the birth of a child. In 1942, the marriage was purportedly terminated by a Mexican divorce, which the instant wife now asserts was illegal and of no effect.

Taking the complaint's allegations as true the instant marriage was "bigamous", although the husband *still denies* the prior marriage. Moreover, according to the second cause of action, the husband falsely represented at the time of the instant marriage that he had never been married before, and the instant wife never knew of his prior marriage. It also appears from affidavits submitted that there is a child by the prior marriage, of which the instant wife also knew nothing at that time.

While it is not deemed essential to a determination of this appeal, as will be seen later, the instant wife admits learning, through her lawyer's investigation during pendency of the husband's separation action in 1953, of a record of a 1940 marriage between one Humphrey Statter and Kate Oglesby, and of the birth of a child by that marriage. Her lawyer is supposed to have told her that the husband denied that he was the same person. Either because she relied on her husband's misrepresentation, or because she lacked sufficient proof, or for both reasons, the instant wife interposed no affirmative defense to the husband's separation action, nor did she counterclaim for annulment or for any other relief. Since then, however, her present lawyers located the former Kate Oglesby in Georgia, identified the husband as the same in both marriages, and also verified the fact of the issue by the prior marriage.

The question posed in this case stems from the well-settled rule that a separation judgment presupposes a valid marriage. It is the primary fact to be established before relief in an action for separation may be obtained. (*Garvin* v. *Garvin*, 306 N. Y. 118; *Cherubino* v. *Cherubino*, 284 App. Div. 731.) Consequently, it is argued that the husband's separation judgment conclusively establishes the marriage as valid, and the instant wife is forever estopped to establish that, in truth, it was bigamous and a nullity.

In determining the consequences of a former adjudication there are certain simple distinctions. *Res judicata,* in its strict and proper sense, sometimes called direct estoppel, applies when a judgment has been recovered between the same parties on an identical cause of action. It is a complete bar to any suit brought on the same cause of action, irrespective of whether the adjudication was obtained after trial, or on default, or whether only some rather than all, or even if none, of the necessary issues were *actually litigated and judicially determined.* It is in this context that the familiar test is applied, namely, '' might the issue have been litigated ''. If it might, the former adjudication is a conclusive bar precluding a showing of contrary fact, no matter how great the proof. It is a total estoppel, not unlike, in this respect, a Statute of Limitations or a Statute of Frauds.

It merits no discussion that an action for annulment is an entirely different cause of action from one for judgment of separation based on the existence and continuance of the marital relation. All that is common to both is the fact of ceremonial marriage.[1]

Collateral estoppel by judgment, often referred to as *res judicata* and usually without being distinguished from direct estoppel, results when the former adjudication is between the same parties, but does not involve the same cause of action. Then, the only issues conclusively determined are those which have been actually litigated and judicially determined. The '' might have been litigated '' test is not applied. Admission by pleading or failure to deny, or default in appearance, or declination to litigate are not sufficient to raise an estoppel as to issues or facts not litigated and not judicially determined. This aspect of collateral estoppel applies to the defendant in the former adjudication and not necessarily to the plaintiff (see, e.g., *Schacht* v. *Schacht,* 295 N. Y. 439).

The general authorities supporting this analysis are relatively free from conflict. (Restatement, Judgments, ch. 3, § 41 *et seq.*; 2 Freeman on Judgments [5th ed.], ch. XI, esp. §§ 660–665, 670–707; 50 C. J. S., Judgments, § 592 *et seq.*; Scott, Collateral Estoppel by Judgment, 56 Harv. L. Rev. 1.) The analysis is applied to judgments in matrimonial actions (Separation Decree as Res Judicata, 138 A. L. R. 346). The same principles obtain in New York. (*Schuylkill Fuel Corp.* v. *Nieberg Realty*

---

[1] The marriage may be void or voidable. In either case, but with greater incidence where the marriage is voidable, elements of estoppel or waiver may be introduced into the case with consequences like, but unrelated to, the estoppel of *res judicata.*

*Corp.*, 250 N. Y. 304; *Honsinger* v. *Union Carriage & Gear Co.*, 175 N. Y. 229; *Griffen* v. *Keese,* 187 N. Y. 454, 464 *et seq.*; *Karameros* v. *Luther,* 279 N. Y. 87; *Meyerhoffer* v. *Baker,* 121 App. Div. 797; *Simon* v. *Bierbauer,* 154 App. Div. 506.) Indeed, in the *Schuylkill* case, Judge CARDOZO, referring to these principles, said '' Both in this State and elsewhere it is recognized as settled law '' (*Schuylkill Fuel Corp.* v. *Nieberg Realty Corp., supra,* p. 307).

Somehow or other, the distinctions are recurringly blurred. As a result, confusion has arisen, especially in the situation where a defendant in a prior action had a possible counterclaim, which was also a possible defense. But the rule here too, when properly viewed, is clear and well settled. The failure to interpose a counterclaim, which is also a defense in the prior action, does not bar a later action on the counterclaim. (*Mercoid Corp.* v. *Mid-Continent Co.,* 320 U. S. 661, 671; *Schuylkill Fuel Corp.* v. *Nieberg Realty Corp., supra*; *Honsinger* v. *Union Carriage & Gear Co., supra*; *Meyerhoffer* v. *Baker, supra*; *Simon* v. *Bierbauer, supra*; Restatement, Judgments, § 58; 50 C. J. S., Judgments, § 684, subd. b, par. [3], p. 136.)

The principle last discussed is the one relevant to this case. But it is in its application in the New York matrimonial cases, few though they have been, that the greatest confusion has been engendered. (See Separation Decree as Res Judicata, 138 A. L. R. 346, 394 *et seq., supra.*)

What we are concerned with are not merely technical rules, long detached from policy considerations, and explainable only as historical relics. The underlying rationale is that one is not compelled to counterclaim, or, for that matter, to litigate what is not deemed important or desirable at the time, merely because in some future context, an estoppel may result.[2] Nor is there apparent any ground for a different policy in matrimonial cases. At least none has ever been suggested. Thus, for an extreme illustration, suppose a husband established a legitimate domicile in another State, and obtained a separation judgment in that State. Surely, the wife should not have been compelled to litigate her counterclaim in that action or that State. The consequence, of course, is quite different, where true *res judicata* applies, namely, where the same cause of action between the same parties is involved. And for obvious reasons.

---

[2] In this State, generally, there is no compulsory counterclaim. (But, cf. Civ. Prac. Act, § 1445.) Compare Federal Rules of Civil Procedure, rule 13. For an excellent statement against a policy of compulsory counterclaim in matrimonial cases, see *Gustafson* v. *Gustafson* (178 Minn. 1).

In this case, the ground for the policy becomes even clearer. Surely, a spouse should not be precluded by a separation judgment from establishing the invalidity of the marriage, especially when later discovered. No rule of morals or law requires that a bigamous marriage be forever treated as valid by estoppel, in the absence of prior litigation and judicial determination of that very issue. And even when knowledge is acquired earlier, but of course after the marriage, there may be reasons of taste, shame, or religion to deter one from publicly exposing the fact that one has lived for years only in seeming marriage. There is also in the matrimonial area another strong policy, not perhaps involved in this case, of not discouraging reconciliation or continuance of the marital relation by compelling counterclaim for divorce or annulment. But the persisting and pervading rationale is that one should not be needlessly compelled to litigate or to counterclaim on the field or at the time selected by the wrongdoer.

In the present case there is no question but that the validity of the instant marriage was neither questioned nor actually litigated in the husband's separation action. The fact of marriage was judicially determined on the pleadings and the failure to defend alone; but this, as we see, has narrower effect than claimed by the husband. The pleading admission is, of course, limited to the purposes of the action (Civ. Prac. Act, § 243; Restatement, Judgments, § 68, comment *f*). Thus, the fact of marriage established is hardly more than the fact of ceremonial marriage, presumptively valid, and without necessary reference to extrinsic evidence which would nullify it (cf. *Williams* v. *Williams*, 63 Wis. 58).

We turn now to the New York cases. The most relevant is *Warshor* v. *Warshor* (130 Misc. 262), decided at the Kings County Special Term. While the court uttered the principles suggested here, and did so rather completely, it applied estoppel on the ground that the validity of the marriage had been litigated and determined, although in fact it had not been. Moreover, in the *Warshor* case, the defendant in the prior action had interposed a counterclaim, but abandoned it and made no effort to offer proof of the void marriage. Logically, that should have made no difference, but the issue was cast in a much different light than here. A later case, arising in this department, relying on the *Warshor* case, applied estoppel, but it clearly appears that the prior separation action was defended, although it was not indicated whether the validity of the marriage was included or excluded from the actual determination (*Kronman* v. *Kronman*, 247 App. Div. 186). Significantly, the *Warshor* and *Kronman* cases relied on *Durham* v. *Durham* (*infra*).

An older case in this department, *Durham* v. *Durham* (99 App. Div. 450), applied estoppel, but did so on the theory of strict *res judicata*, as if the same causes of action were involved. It was expressly held that the invalidity of the marriage "might have been litigated" in the prior action. Mr. Justice LAUGHLIN, recognizing the distinctions suggested here, dissented. The case would be, by now, of extremely weakened authority, in view of the later pronouncements of the Court of Appeals which clearly demark strict *res judicata* from collateral estoppel. However, the authority of the *Durham* case was already all but destroyed in the later case of *Ostro* v. *Ostro* (169 App. Div. 790), also decided in this department. On this occasion Mr. Justice LAUGHLIN, who had dissented in the earlier case, wrote on behalf of the court. Yet it is on the *Durham* case, that the *Warshor* and *Kronman* cases rely.

There are other New York cases which seem to be applicable, but are easily distinguished (e.g., *Hoyt* v. *Hoyt,* 265 App. Div. 223; *Frost* v. *Frost,* 260 App. Div. 694). They turned on adoption of separation agreements in the prior judgments of divorce, obtained in Nevada, and plaintiff was held estopped in the second action from undermining the adjudicated contractual agreement, by an attack on the validity of the marriage. Moreover, in the *Frost* case, apart from other pertinent principles of estoppel, the marital *res* had been dissolved by divorce; there was nothing to annul. Interestingly, the *Frost* case relies on the largely discredited *Durham* case, and the *Hoyt* case relies on the *Frost* case.

But there seems little profit in case-matching the New York authorities in the matrimonial field as to collateral estoppel based on a prior separation judgment.[3] As indicated earlier, there is recurring confusion in the reasoning, and most, if not all of the cases, are sustainable on the circumstances recited, whether they played a part or not in the *ratio decidendi.* In none that is deemed relevant has our highest court spoken. Certainly, no court has purported to announce a special rule in the matrimonial cases, and, it is quite clear that the general rule precludes an estoppel where a former adjudication rests merely on the failure to use a defense which is now asserted as a counterclaim.

Moreover, even on a view contrary to that stated herein, the wife would be entitled to go to trial in this case and establish that her failure to interpose the defense in the separation suit

---

[3] See, e.g., *Risikoff* v. *Risikoff* (2 Misc 2d 186) in which the court reached a correct result, on the view taken here, but based its conclusion on questionable analysis of *Karameros* v. *Luther* (*supra*).

was caused by fraud, namely, by the husband's denial when the separation action was pending that he was the same man who had married the former Kate Oglesby. Avoidance of *res judicata* or collateral estoppel may always be effected by showing fraud in preventing a defense or counterclaim (Restatement, Judgments, § 121; 2 Freeman on Judgments [5th ed.], §§ 553–554; 50 C. J. S., Judgments, § 682, p. 130). Of course, in this situation the wife would have an onerous burden of proof, namely, establishment of fraud pending the separation action by clear and convincing evidence.

Since this case may go to trial, a caveat is indicated. The facts have been taken as alleged by the wife or averred in the affidavits submitted in opposition to the motion. If it should appear that the instant wife, before her marriage, knew or should have known of the prior marriage, an entirely different situation might be presented. There may also be other possibilities which ought to affect the wife's right to relief in this action. As to these possible questions, there may be other substantive principles of estoppel available, unrelated to the general doctrine of *res judicata* and its several species. On none of these questions do we purport to pass, nor could we.

Accordingly, the order denying the motion to dismiss the complaint should be affirmed, with $20 costs and disbursements of the appeal to respondent.

VALENTE and BERGAN, JJ., concur with BREITEL, J.; PECK, P. J., and FRANK, J., concur in result.

Order unanimously affirmed, with $20 costs and disbursements to the respondent.